<table>
<tr><td>

**DISTRICT COURT, COUNTY OF EL PASO, COLORADO**
P. O. Box 2980
Colorado Springs, CO 80901-2980
Phone:  (719) 448-7700

</td><td></td></tr>
</table>

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF EL PASO, COLORADO**<br>P. O. Box 2980<br>Colorado Springs, CO 80901-2980<br>Phone:  (719) 448-7700 | EFILED Document<br>CO El Paso County District Court 4th JD<br>Filing Date: Feb 24 2012 12:11PM MST<br>Filing ID: 42699139<br>Review Clerk: Rachael Maestas |
| **Willem Adams,**<br><br>         **Plaintiff,**<br><br>**vs.**<br><br>**ModernAd Media, LLC, a Florida Limited Liability Company; 7657030 CANADA INC., a Canadian Corporation d/b/a Acquinity Interactive; Warren Rustin; and Garry Jonas,**<br><br>         **Defendants.** | Case Number:<br>2012 CV 831<br><br>Division: |
| Ian D. Kalmanowitz, #32379<br>CORNISH & DELL'OLIO, P.C.<br>431 N. Cascade Avenue<br>Colorado Springs, CO 80903<br>Phone:  (719) 475-1204<br>Fax:     (719) 475-1264 | |
| **MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MODERNAD MEDIA, LLC** | |

COMES NOW, Plaintiff Willem Adams, by and through undersigned counsel, and requests that the Court enter default judgment against Defendant ModernAd Media, LLC pursuant to Colo. R. Civ. P. 55(b).  In support of this motion, Plaintiff states the following:

1.       This is an action asserting two causes of action against Defendant ModernAd Media, LLC.  Plaintiff seeks relief in the form of monetary damages for breach of contract and fraudulent misrepresentation against Defendant ModernAd Media, LLC.

2.      Defendant ModernAd Media, LLC was served with the summons, complaint, and civil cover sheet in this action on January 30, 2012.  *See* Ex. 1, Affidavit of Service of Summons and Complaint.

3.      Defendant ModernAd Media has failed to plead or file any other response within 21 days after the service of the summons and complaint as required by Colo. R. Civ. P. 12(a).

4.      Venue is proper in El Paso County District Court because the Plaintiff is a resident of Colorado Springs, CO.  *See* Ex. 2, Affidavit of Willem Adams at ¶¶ 2, 4 (hereafter "Adams Aff.").  Additionally, venue is proper because Defendant ModernAd Media, LLC, a foreign limited liability company authorized by the Colorado Secretary of State to transact business within the state of Colorado, at all times relevant to the complaint maintained an office in Colorado Springs, CO, and transacted business in Colorado Springs, CO.  All or a substantial part of the events giving rise to the claims against Defendant ModernAd Media, LLC occurred in El Paso County, CO.  *See* Ex. 3, Affidavit of Ian D. Kalmanowitz, Esq. at ¶ 2.

5.      Defendant ModernAd Media is not a minor, an incapacitated person, an officer or agency of the State of Colorado, or in the military service.  *See* Kalmanowitz Aff. at ¶ 3.

6.      ModernAd Media breached a contract with Plaintiff and made fraudulent misrepresentations to Plaintiff about how he would be paid and the amounts he would be paid.  The contract that was breached by ModernAd Media is attached to Plaintiff's Affidavit as Ex. 1.

7.      As set forth and supported by the facts contained in the attached affidavit of Plaintiff Willem Adams: (a) Defendant ModernAd Media made fraudulent

misrepresentations to Plaintiff by making false promises to pay him on a commission basis during his employment.  At the time it made those promises, ModernAd Media did not intend to be bound by them, and had no intention of paying Plaintiff on a commission basis.  Plaintiff suffered damages as a result of ModernAd Media's fraudulent misrepresentations, including emotional distress, mental anguish, inconvenience, and loss of enjoyment of life due to the fact that his employer had lied to him in order to induce him to accept employment, as well as the knowledge that he was induced to work under false pretenses, and was working for a salary that was approximately half of what he would have earned if he had been paid commissions as promised.  (b) Defendant ModernAd Media breached the terms of Plaintiff's employment agreement which obligated it to compensate him in the event of a sale or change of control of the business.  In January, 2011, ModernAd Media entered into a business transaction with Acquinity Interactive which resulted in a change of control of ModernAd Media, as defined within Plaintiff's employment agreement.  *See* Adams Aff. at ¶¶ 14-16.  ModernAd Media failed to pay Plaintiff the compensation due to him under the terms of the employment agreement upon the change of control that occurred in January 2011.  (c) Defendant ModernAd Media breached the terms of Plaintiff's employment agreement which obligated it to make a severance payment equal to the value of the remaining term of the contract to Plaintiff if his employment was terminated without cause prior to the end of the employment.  Plaintiff's employment was terminated without cause in early January, 2011.  *See* Adams Aff. at ¶¶ 5, 20-21.  At the time of his termination, there was one year remaining on the term of the contract.  *Id.* at ¶ 22.  Accordingly, pursuant to the terms of the employment agreement, ModernAd

3

Media was required to pay Plaintiff the equivalent of one year's salary when he was terminated without cause.  ModernAd Media has failed to make that payment.

8.      As set forth in the attached affidavit, Plaintiff has suffered the following damages as a result of ModernAd Media's fraudulent misrepresentations:

> a.      Damages for emotional distress suffered as a consequence of ModernAd Media's intentional false promises to induce Plaintiff to work for it, which resulted in him working for a salary that was approximately half of what he would have earned if he were paid on a commission basis.  An award of damages in the amount $75,000 would be adequate to compensate Plaintiff for the harm he has suffered;

> b.      Damages due to ModernAd Media's failure to pay compensation due to Plaintiff upon the change of control of ModernAd Media.  Pursuant to the terms of the contract, Plaintiff is entitled to recover 1% of two times the gross revenue of ModernAd Media's co-registration in the twelve months prior to the sale.  Adams Aff. at ¶¶ 17-18.  The gross revenue of the co-registration division in the twelve months preceding the change of control was approximately $65,211,168.  Based on that revenue, Plaintiff is entitled to recover $1,304,223.36.  Adams Aff. at ¶ 19.

> c.      Damages due to ModernAd Media's failure to pay Plaintiff the severance payment equal to one year of his salary at the time of his termination without cause, or $240,000.

9.      Pursuant to C.R.S. § 5-12-102(1), Plaintiff is entitled to recover pre-judgment interest on the damages incurred due to ModernAd Media's breach of contract at the

rate of 8% per annum from January 1, 2011 through the date judgment is entered. Pursuant to C.R.S. § 5-12-102(4), Plaintiff is entitled to recover post-judgment interest on the damages incurred due to ModernAd Media's breach of contract at the rate of 8% per annum.

WHEREFORE, Plaintiff requests that the Court enter default judgment against Defendant ModernAd Media for $75,000 emotional distress, $1,304,223.36 for breach of contract due for failing to compensate Plaintiff for the change of control, and $240,000 for breach of contract due to failure to pay severance, for a total judgment against Defendant ModernAd Media of $1,619,223.36, plus interest at 8% per annum on the breach of contract damages.

Respectfully submitted this 24th day of February, 2012.

CORNISH & DELL'OLIO, P.C.

s/Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
431 North Cascade Ave.
Colorado Springs, Colorado
Tel. (719) 475 1204
Fax (719) 475 1264
ikalmanowitz@cornishanddellolio.com
Attorneys for the Plaintiff

## CERTIFICATE OF SERVICE

   I hereby certify that on this 24th day of February, 2012, I caused a true and correct copy of the above and foregoing **MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MODERNAD MEDIA, LLC** to be served on the following at the address shown and via the method indicated for each:

| | | |
|---|---|---|
| ModernAd Media, LLC | (X) | First Class Mail |
| Registered Agent: | ( ) | Hand Delivery |
| Corporate Creations Network, Inc. | ( ) | Facsimile |
| 3773 Cherry Creek Drive North #575 | ( ) | Overnight Delivery |
| Denver, CO 80209 | ( ) | Via File and Serve |
| | ( ) | E-mail |

s/Ian Kalmanowitz
Ian Kalmanowitz

## DISTRICT COURT, EL PASO COUNTY, STATE OF COLORADO

WILLEM ADAMS,

      Plaintiff(s),

vs.

MODERNAD MEDIA, LLC, A FLORIDA LIMITED
LIABILITY COMPANY; ET AL.,

      Defendant(s).

EFILED Case Number 2012 CV 831
CO El Paso County District Court 4th JD
AFFIDAVIT OF SERVICE 2:11PM MST
Filing ID: 42699139
Review Clerk: Rachael Maestas

---

I, Joe Rael, being first duly sworn on oath, depose and say the following:

On January 30, 2012 at approximately 1:05 PM, I served the within SUMMONS; COMPLAINT; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS–CLAIM OR THIRD PARTY COMPLAINT on MODERNAD MEDIA in the following manner:

**Corporate Service:** By leaving a copy of the SUMMONS; COMPLAINT; DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS–CLAIM OR THIRD PARTY COMPLAINT with KISHIA NELSON, the AUTHORIZED AGENT of CORPORATE CREATIONS NETWORK, INC, the REGISTERED AGENT of MODERNAD MEDIA.

Service was effected at 3773 CHERRY CREEK DRIVE NORTH # 575, DENVER, CO 80209.

Approximate description of person process was left with:

Sex: **Female** – Skin: **Black** – Hair: **Black** – Age: **29** – Height: **5'7"** – Weight: **145** – Other:

SERVED IN DENVER COUNTY

Process Service Fee: S___

STATE OF COLORADO
COUNTY OF DENVER

X _____
  Joe Rael

Signed and sworn to before me on
this _3l_ day of _Jan_ , 201 2 .



Notary Public

Elite Process Service, Inc.
2755 S. Locust St. Suite 221
Denver, CO 80222
303–635–6934

Client Reference Number:
Lawyer Reference Number:
EPS Number: 23433

NOTARY PUBLIC
JEREMY
GIBSON
STATE OF COLORADO
MY COMMISSION EXPIRES JULY 15, 2015

Cornish & Dell'Olio, P.C.
431 N. Cascade Ave.
Suite 1
Colorado Springs, CO 80903
Requestor: Ian D. Kalmanowitz
(719) 475–1204



*23433*

DISTRICT COURT, COUNTY OF EL PASO, COLORADO

P. O. Box 2980
Colorado Springs, CO 80901-2980
Phone:  (719) 448-7700

EFILED Document
CO El Paso County District Court 4th JD
Filing Date: Feb 24 2012 12:11PM MST
Filing ID: 42699139
Review Clerk: Rachael Maestas

**Willem Adams,**

**Plaintiff,**

**vs.**

**ModernAd Media, LLC, a Florida Limited Liability Company; 7657030 CANADA INC., a Canadian Corporation d/b/a Acquinity Interactive; Warren Rustin; and Garry Jonas,**

**Defendants.**

Case Number:
2012 CV 831

Division:

Ian D. Kalmanowitz, #32379
CORNISH & DELL'OLIO, P.C.
431 N. Cascade Avenue
Colorado Springs, CO 80903
Phone:  (719) 475-1204
Fax:       (719) 475-1264

## AFFIDAVIT OF WILLEM ADAMS

I, Willem Adams, being duly sworn, state as follows:

1.     I am the Plaintiff in this action, and have personal knowledge of facts relating to this case.

2.     I am a resident of Colorado Springs, CO.

3.     On December 30, 2008, I signed an employment agreement with Defendant ModernAd Media hiring me as the Vice President of Sales, Co-registration.  A true and correct copy of that employment agreement is attached to this affidavit as Exhibit 1. The employment agreement contained a three contained a three year term of employment that was to run from January 1, 2009 through January 1, 2012.

4.      I worked for ModernAd Media at its offices in Colorado Springs, CO, where I conducted business on behalf of the company.

5.      The employment agreement provides that my employment could only be terminated for the following reasons:  death, disability, expiration of the term, for cause by the company, without cause by the company, with good reason by the employee, without good reason by the employee, and by mutual agreement of the parties.  Exhibit 1 at ¶ 10.  Thus, I was not an at-will employee.

6.      The employment agreement includes a provision requiring the payment of severance in the event that my employment was terminated by ModernAd Media "without cause."  Exhibit 1 at ¶ 11(b).  Specifically, if I was terminated "without cause," ModernAd Media would be required to pay me the remainder of the compensation for the three year term of employment that remains unpaid at the time of my termination.

7.      The employment agreement also includes what is essentially a profit-sharing provision which requires a payment to me in the event of the sale of ModernAd Media, or a change of control of ModerAd Media.  Exhibit 1 at p. 22.  In the event of a sale of ModernAd Media, the employment agreement calls for me to be paid one percent of the Net Sale Proceeds.  Under the agreement, "Net Sale Proceeds" means the cash amount or other consideration (whether stock, other securities or notes) received by the Company or a member of the Company for and in consideration of the Sale of the Company.  *Id.*  In the event of a change of control of ModernAd Media, the employment agreement calls for me to paid one percent of the Total Valuation of the co-registration division of the Company.  The agreement defines "Total Valuation" as the greater of two times gross revenues associated with the co-registration division of the Company for the

twelve months immediately preceding the month in which the change of control occurs, or the value of the Company as determined by an independent third party audit. *Id.*

8.    The Agreement defines 'sale' and 'change of control' as follows:

> A "Sale" of the Company shall mean the sale or other conveyance of either (y) all or substantially all of the assets of the Company, or (z) one hundred percent (100%) of the issued and outstanding membership units or ownership interests of the Company to one or more persons or entities which are not, as of the date hereof, an affiliate or equity holder of the Company. A "Change of Control" of the Company shall mean the sale or other conveyance of more than 50% but less than 100% of the issued and outstanding membership units or ownership interests of the Company to one or more persons or entities which are not, as of the date hereof, an affiliate or equity holder of the Company.

*Id.*

9.    The employment agreement guaranteed me a minimum salary of $20,000 per month, and also called for me to be paid on a commission basis. Exhibit 1 at p. 22.

10.    I was induced to accept employment with ModernAd Media due in part to its promise to pay me on a commission basis, as the standard commissions paid in my field should have resulted in me earning commissions in an amount that was at least double the guaranteed minimum monthly payment promised in the employment agreement.

11.    The employment agreement required that ModernAd Media and I agree on the terms of the commission structure within 60 days of the date of the agreement. *Id.* Based on ModernAd Media's promise to pay me on a commission basis and my belief that ModernAd Media intended to honor that promise, I attempted to negotiate a commission structure with ModernAd Media and made proposals for the development of a commission plan. ModernAd Media never responded to me, and refused to negotiate a commission plan as had been promised.

12.     It is my belief that ModernAd Media never intended to negotiate a commission plan with me, and never intended to pay me any commissions; but rather, that ModernAd Media made an empty promise to me in order to induce me to accept employment on terms more favorable to ModernAd Media.

13.     As a result of ModernAd Media's failure to deal with me in good faith and honor its promise to pay me commissions, I suffered damages, including emotional distress related to knowing that was working for an employer that intentionally misled and deceived me, as well as the knowledge that my dishonest employer was profiting by obtaining my services for approximately half of what they were worth in the industry.

14.     In late December, 2010, Warren Rustin, the principal owner of ModernAd Media announced to ModernAd Media's clients that he had "recently sold certain assets of ModernAd Media to a group of ModernAd executives that includes our former CEO Gary Jonas, Greg Van Horn and Josh Greenberg. They have formed an internet marketing company named Acquinity Interactive and will be extremely well positioned to continue to grow and develop your existing marketing activity. As part of the Acquinity transition, ModernAd Media will no longer be involved in internet marketing activities." Exhibit 2, Email from Rustin.

15.     The asset purchase agreement between ModernAd Media and Mr. Rustin and Acquinity identifies the assets and membership units that ModernAd Media was selling to Acquinity.  The membership units identified in the asset purchase agreement account for more than half of ModernAd Media's membership units, but not all of ModernAd Media's membership units.

16.     Thus, the transaction between ModernAd Media and Acquinity was a change of control as contemplated in my employment agreement because ModernAd Media  sold more than 50% but less than 100% of its issued and outstanding membership units or ownership interests.   The total purchase price was slightly less than $3.2 million.

17.     Because the transaction between ModernAd Media and Acquinity is most properly classified as a change of control, I was entitled to receive compensation as set forth in my employment agreement.  Specifically, upon a change of control, I was to receive one percent of the Total Valuation of the co-registration division of the Company.  The agreement defines "Total Valuation" as the greater of two times gross revenues associated with the co-registration division of the Company for the twelve months immediately preceding the month in which the change of control occurs, or the value of the Company as determined by an independent third party audit.  Exhibit 1 at p. 22; *see also* ¶ 5, *supra.*

18.     There was no independent third party audit conducted to determine the value of the company; however, I am able to make a reasonable estimate of the Total Valuation based on my knowledge of the revenues associated with the company's co-registration division.  From January through June, 2010, the total revenue generated by the co-registration division was approximately $32,605,854.  Attached as Exhibit 3 are spreadsheets showing the total revenue for the co-registration division for each of the first six months of 2010.  While I do not have access to the revenue figures for the last six months of 2010, I am aware that Modern Ad Media's business did not drop off, and there were no significant changes in the revenues that the co-registration division generated.  I have calculated the revenues associated with the co-registration for the

twelve months preceding the change of control (January-December, 2010) to be $65,211,168. I determined this amount by taking a monthly average of the revenues of the co-registration division over the first six months of 2010 ($5,434,264), and multiplying that monthly average by the full twelve months period specified in the agreement for determining the total valuation. In order to determine the Total Valuation, the $65,211,168 in gross revenues for 2010 must be multiplied by two, which yields a total of $130,422,336. Pursuant to the terms of the employment agreement, I should have received compensation in the amount of one percent of the Total Valuation of $130,422,336, or $1,304,223.36.

19.    Modern Ad Media breached its contract with me when it failed to pay me the agreed upon "other compensation" for the change of control of the company of $1,304,223.36.

20.    After the change of control transaction between ModernAd Media and Acquinity, my employment with ModernAd Media was terminated without cause, as termination because of the change of control of the company's assets is not contained within the enumerated definition of "cause" for termination.

21.    Because ModernAd Media did not terminate my employment for "cause," my employment was terminated "without cause," which triggered ModernAd Media's obligation to pay me severance in an amount equal to the remainder of the term of the employment agreement.

22.    At the time my employment was terminated, there was one year remaining in the term of my employment as specified on the employment agreement, and accordingly, I

am entitled to receive a severance payment in an amount equal to the compensation I would have earned for one year, or $240,000.

Further affiant sayeth naught.

2-23-2012
_____
Date

_____
Willem Adams

STATE OF COLORADO )
) ss.
COUNTY OF EL PASO )

Subscribed and sworn to before me by Willem Adams this _23_ day of February, 2012.

_____
Notary Public

My commission expires: 11/29/2015

MARILYN K LAURICH
Notary Public
State of Colorado

EFILED Document
CO El Paso County District Court 4th JD
Filing Date: Feb 24 2012 12:11PM MST
Filing ID: 42699139
Review Clerk: Rachael Maestas

# Exhibit 1

## EMPLOYMENT AGREEMENT

This Employment Agreement (hereinafter this "Agreement") is entered into and effective as of _12-30_, 2008 (hereinafter the "Effective Date") by and between ModernAd Media LLC., a Florida limited liability company having its principal business offices at 6420 Congress Avenue, Suite 1800, Boca Raton, Florida 33487 (hereinafter referred to as the "Company") and Willem Adams, an individual resident of the State of Colorado (hereinafter "Employee"). Company and Employee are jointly referred to herein as the "Parties." In consideration of Employee's employment by the Company, and the mutual promises, covenants, agreements hereinafter set forth, the Company and Employee agrees as follows:

1. **Definitions and Rules of Construction.**

   a) The following terms used in this Agreement with their initial letters capitalized have the meanings set forth in this Subsection. Defined terms may be used in the singular and the plural, as the context requires:

      i. "Affiliate" means with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, or is controlled by or is under common control with, the Person specified. As used herein, the term "control" (including the correlative terms "controlling", "controlled by", or "under common control") means the possession directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities, by contract or otherwise. Without limiting the foregoing definition of "control" and said correlative terms, the ownership, directly or indirectly of 50% or more of the voting shares, interest or common equity of a corporation or other entity shall be deemed to constitute "control" of that corporation or entity.

      ii. "Best Efforts" means the efforts that a prudent person desirous of achieving a result would use in similar circumstances to achieve that result as expeditiously and as reasonably possible, provided, however, that a Person required to use Best Efforts under this Agreement will not be thereby required to take actions that would result in a material adverse change in the benefits to such Person of this Agreement or to dispose of or make any change to its business, expend any material funds or incur any other material burden.

      iii. "Developments" means and includes any inventions, ideas, discoveries, improvements, advances, processes, designs, algorithms, computer programs, software, source code, object code, executable code, databases, documentation, or works of authorship, whether or not patentable, copyrightable, protectable as a Trade Secret, or otherwise legally protectable, and which are made or conceived by Employee whether solely or jointly with others at any time during his employment with the Company or at any time within 18 months following the termination of Employee's employment with the Company and which:

    i.    are suggested by or arise or result, directly or indirectly, from any task assigned to me by, or work performed by me for or on behalf of the Company; or

    ii.    in any respect relate at the time of conception or reduction to practice to any actual or anticipated business, research, development, product, service or activity of the Company known to me as a consequence of Employee's employment with the Company; or

    iii.    is made in whole or in part during Employee's hours of employment with the Company or with the use of any of the Company's facilities, materials, equipment, supplies or personnel; or

    iv.    is derived in any respect directly or indirectly from or with use of any Trade Secrets or Confidential Business Information of the Company.

iv.    "Derivatives" and "Derivative Works" means: (i) for copyrightable or copyrighted material, any translation, abridgment, revision, or other form in which an existing work may be recast, transformed or adapted; (ii) for patentable or patented material, any improvement thereon; and (iii) for material which is protected as a Trade Secret, any new material derived from such existing Trade Secret material, including any material which may be protected by any copyright, patent or Trade Secret

v.    "Incapacity" means the inability of Employee to perform at least 75% of his Duties under this Agreement on a daily basis.

vi.    "Intellectual Property Rights" means all intellectual property rights, worldwide, arising under statutory law, common law or otherwise under the law or any governmental authority, domestic or foreign, and whether or not perfected, including but not limited to, all: (i) rights associated with trademark, service mark, trade dress or trade name, including without limitation trademark or service mark applications, trademark or service mark registrations; (ii) patents or patent applications owned or licensed by a party; (iii) rights associated with works of authorship, including without limitation copyrights, copyright applications, copyright registrations; (iv) rights relating to the protection of Trade Secrets and confidential information; (v) any other proprietary rights relating to intangible property; and (vi) divisions, continuations, renewals, reissues and extensions of any of the foregoing (as and to the extent applicable) whether now existing or hereafter filed, issued or acquired.

vii.    "Person" means a natural person, a corporation (for profit or not for profit), partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or any agency, department or other political subdivision thereof) or any other entity.

viii.  "Sale or Change of Control of the Company" means the first to occur of the following events: (1) the sale of all or substantially all of the outstanding units or membership interests in the Company to an Independent Third Party Purchaser (as defined herein); or (2) the sale of all or substantially all of the Company's assets to an Independent Third Party Purchaser. Sale or Change of Control of Company does not include any disposition of any of the assets of, or units, membership or other interests in the Company in connection with the liquidation or dissolution of the Company unless and then only to the extent such liquidation or dissolution occurs in connection with and is part of the sale of all or substantially all of the assets of or membership interest in the Company, to an Independent Third Party which continues to operate the Company or the Company's business as a going concern after such transaction. As used herein the term "Independent Third Party" means a person or entity other than the Company or any of its affiliates or any of their respective or other equity holders or their respective family members.

ix.  "Termination Date" means the date of Employee's termination of employment with the Company, for any reason.

b)  General Rules of Construction. All references in this Agreement to Articles, Sections, Subsections, Paragraphs, Subparagraphs, Schedules and Exhibits are to articles, sections, subsections, paragraphs, subparagraphs, schedules and exhibits in or to this Agreement, unless otherwise specified. The words "hereof", "herein", "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. The term "including" is not limiting and means "including without limitation". In the computation of periods of time from a specified date to another specified date, the word "from" means "from and including", and the words "to" and "until" each mean "to but excluding", and the word "through" means "to and including".

2.  **Employment/Position**. The Company hereby employs Employee, and Employee hereby accepts employment with the Company as V.P. of Sales, Co-registration, upon the terms and subject to the conditions set forth in this Agreement. The parties hereby acknowledge and agree that Employee shall be based in Colorado Springs, Colorado, unless otherwise mutually agreed.

3.  **Term**. Employee's employment date with the Company is January 1, 2009. Employee's employment with the Company, unless sooner terminated in accordance with the provisions of Section 10, will continue for a period of three (3) years thereafter (the "Term"). The date of Employee's termination of employment from the Company, for any reason, is referred to throughout this Agreement as the "Termination Date".

4.  **Compensation**. During the Term of employment, the Company will compensate Employee as specified in the attached Exhibit A, which is incorporated herein by this reference, for any and all services of every nature rendered by Employee in connection with his employment with the Company. Employee acknowledges that this compensation is not a salary and is a draw on his commission payments as fully set forth in Exhibit A. Employee expressly

acknowledges and agrees that his commission received by the Company constitutes full, adequate and sufficient consideration to Employee for all of his duties, obligations and covenants under this Agreement.

5. **Duties.**

   (a) During the course of his employment, Employee shall have those duties and responsibilities, and the authority, customarily possessed by the V.P. of Sales, Co-registration of a company and such additional duties as may be assigned to him from time to time by the Company.

   (b) Specific duties of Employee's employment are set forth throughout this Agreement and in the attached Exhibit B. Employee must devote his entire working time, energy, Best Efforts and attention exclusively to his duties to the Company hereunder and must faithfully and diligently serve the Company's interests. Employee must not do anything to directly or indirectly compete with the Company's present, contemplated or future business, and he must not directly or indirectly plan or organize any competitive business activity nor assist anyone else in doing so both during the Term of this Agreement as well as during the period where the Restrictive Covenant as set forth in this Agreement is in effect. Employee must obtain the Company's written consent prior to engaging in any other business activity and the Employee agrees that the Company may withhold that consent in its sole and absolute discretion.

   (c) The parties acknowledge that Employee is receiving commissions from certain business activities which he engaged in prior to the execution of this Agreement and which are outside the scope of his employment hereunder. Employee has set forth the names of all entities, directly or indirectly, paying such commissions along with a description of Employee's activities associated with said commissions on the attached Exhibit C. Employee's activities in respect to those matters set forth on Exhibit C are not deemed a default under or breach of Subsection 5(a) of this Agreement provided Employee does not devote any time between the hours of 9:00 a.m. and 5:00 p.m., Monday through Friday throughout the Term of his employment to any of the activities identified on the attached Exhibit C, and that such activities do not in any way prevent, impair or affect Employee 's fulfillment of his obligations to the Company or the proper performance of his duties or responsibilities under this Agreement, and further provided that such activities do not otherwise constitute a default under or breach of the remaining terms and conditions of this Agreement. However, nothing in this Agreement is intended to be construed as or operate to limit or impair the Company's right to pursue, solicit, enter into or have any business dealings ("Business Dealings") or transactions whatsoever with any such third parties. Furthermore, the Company shall have no liability whatsoever to Employee or anyone claiming by, through or under Employee for or with respect to any claims or damages, including but not limited to claims of lost revenues, loss of an opportunity or business expectation which arises from or incident to any Business Dealings between Company and those entities identified on Exhibit C hereto. Employee acknowledges that in the event a conflict arises between Employee's interests and the Company's interests with respect to those entities specified on Exhibit C, the

Company's interests shall prevail.

(d) Employee will report to the Company's Chief Employee Officer, Garry Jonas, or to other such Employee officer or director of the Company as the Company may from time to time designate. Throughout Employee's employment with the Company, Employee must comply with all the Company's policies and procedures as adopted from time to time, as well as all applicable governmental laws and regulations.

6. **Developments.**

a) All Developments belong to the Company. Any and all Developments and all Intellectual Property Rights in and to any and all Developments are and shall be the sole and exclusive property of the Company. With respect to all Developments, Employee agrees that without royalty or payment of any further consideration to him:

    i. Employee must promptly and fully inform the Company of all Developments in writing, and must set forth in detail all procedures employed and results achieved with respect to those Developments;

    ii. Employee does hereby fully, irrevocably and in perpetuity assign to the Company and its successors and assigns, all of his rights, title and interest in and to all Developments, including without limitation all Intellectual Property Rights therein, and to all (i) applications for United States Letter Patent, foreign Letters Patent, any division(s), reissue(s), continuation(s), continuation(s) in part and extension(s) thereof; and (ii) U.S. copyright registration(s), and foreign copyright registration(s) for or with respect to any Developments, and all renewals thereof; and (iii) United States Letters Patent, all foreign Letters Patent, any division(s), reissue(s), continuation(s), continuation(s) in part or extension(s) thereof and (iv) applications for registration and all registrations of any United States or foreign trademark(s), service mark(s) or trade dress and any renewals thereof, at any time granted upon or with respect to any Developments (hereinafter collectively "Registrations"). Employee must promptly execute and deliver to the Company or its nominee separate assignment documents, if and as required by the Company from time to time;

    iii. Employee must at all times following the Effective Date hereof, whether during or subsequent to any expiration or termination of employment with the Company, fully cooperate with the Company and its attorneys in preparation of any and all U.S. and foreign patent, copyright and trademark applications for Developments and must execute, acknowledge and deliver promptly to the Company all documents and written instruments and do all other acts, such as (by way of example, but not limitation) giving testimony in support of the Company's inventorship, and executing any Registration or filings requested by the Company, or as may in the opinion of the Company or its lawyers be necessary to vest or perfect any rights or title in or to any Developments or Intellectual Property Rights therein, in the Company or its nominees, and to obtain, maintain, or enforce any

Registrations or other Intellectual Property Rights or protection which the Company has or may acquire or may seek to obtain, maintain or enforce with respect to any Developments and if such cooperation is requested by Company after the Termination Date, the Company will compensate Employee for his time at an hourly rate of $150.00, and reimburse him for his reasonable out of pocket expenses, if any, necessarily incurred in providing such cooperation;

iv. The decision to file for patent, copyright, trademark or service mark protection or to maintain the confidentiality of any Development, whether as a trade secret or as confidential business information, shall be in the sole and absolute discretion of the Company and Employee shall be bound by all such decisions;

v. No license or other rights to any Development is granted to Employee hereunder nor may in any manner be implied by this Agreement;

vi. If and to the extent that Employee has or acquires any rights in or to any Developments that cannot be assigned to or are not assigned to the Company, Employee hereby unconditionally and irrevocably waives the enforcement of all such rights and all claims or causes of action of any kind with respect to the foregoing against the Company, its successors, assigns, or any of their respective licensees or customers, whether now known or which hereafter become known; and

vii. If and to the extent the Employee has or acquires any rights in and to any Development that cannot be assigned to or are not assigned to the Company and cannot be waived, then Employee hereby grants to the Company and its respective successors and assigns an exclusive, worldwide, royalty-free, fully paid-up and irrevocable license throughout the entire term of such rights, to make, use, reproduce, sell, distribute, modify, create derivative works of, publicly perform, publicly display and otherwise exploit (with the right to sublicense through multiple tiers of sublicensees and to assign such rights) any such Developments in any way whatsoever.

b) **Employee's Prior Inventions**. A complete list of all inventions, ideas, processes, and designs, if any, patented or unpatented, copyrighted or uncopyrighted, including a brief description thereof, which Employee made or conceived prior to his employment with the Company ("Prior Inventions") and which therefore are excluded from the scope of this Agreement, are set forth in the attached Exhibit D.

c) **Acknowledgment of Works Made for Hire**. Employee acknowledges that all copyrights in and to any works of authorship, (including but not limited to any software, html, source, object and other code, documentation, manuals and related materials) created by him during the Term of this Agreement, whether created solely by him or jointly with others within the scope of his employment with the Company, belong to the Company both by operation of law and by assignment and that all such works are "works made for hire" as that term is defined in the United States Copyright Act. If and to the extent that any work of authorship at any time created by Employee while

employed or engaged by the Company, is not properly characterized as a "work made for hire", Employee hereby irrevocably grants, assigns and otherwise transfers and conveys in perpetuity to the Company, and its successors and assigns, all rights, title and interest in and to those works, including without limitation all copyright interests and other Intellectual Property Rights now existing or hereafter discovered, in all media and forms of expression, all of which shall vest in the Company, its successors and assigns for all purposes and which shall further include without limitation, the right to file and obtain and hold in the Company's own name or in the name of the Company's nominees, any Registrations, and any similar protection which may be available for or in such works of authorship.

7.  **Trade Secrets and Confidential Business Information.**

(a) During the course of his employment with the Company, Employee may have occasion to conceive, create, develop, review, or receive information that is considered by the Company to be its Trade Secrets or Confidential Business Information. Employee must at all times during and after his employment with the Company, hold all of the Company's Trade Secrets and Confidential Business Information in the strictest confidence, and must not at any time, whether while employed by the Company or otherwise, directly or indirectly, disclose or use for the benefit of himself or any other Person whatsoever, any Trade Secret or Confidential Business Information of the Company. Employee must use all reasonable precautions to ensure that the Company's Trade Secrets and Confidential Business Information is properly protected and kept from unauthorized Persons, use or disclosure.

(b) For purposes of this Agreement, "Trade Secrets" of the Company include, but are not limited to, any of the following: (a) specifications, descriptions, designs, diagrams, dimensions, and tolerances of systems, machinery, products, parts, and components; (b) plans, blueprints, and part and assembly drawings; (c) computer programs, whether in the form of source code, object or executable code or any other form, including software, programmable array logic, formulae, algorithms, methods, techniques, processes, designs, specifications, diagrams, flow charts, manuals, descriptions, instructions, improvements, and the ideas, systems, and methods of operation contained in or relating to any of the foregoing; (d) information concerning or resulting from research and development work performed by the Company (whether or not performed in whole or in part by the Employee in the course of his employment with the Company), including, but not limited to, improvements, discoveries, inventions and ideas regarding new products or services; (e) all data, databases, marketing plans, and work product developed by or for the Company; and (f) any and all other proprietary information of the Company, that qualifies as a "trade secret" under Florida's Uniform Trade Secrets Act, whether utilized by the Company in development, delivery, installation, maintenance, support and marketing of any of the Company's products or services or otherwise, however documented.

(c) For the purposes of this Agreement, "Confidential Business Information" of the Company includes, but is not limited to, any information other than Trade Secrets that is (i) of any value or significance to the Company and (ii) not generally known to competitors of the Company, nor intended by the Company for general dissemination, including, but not limited to, lists of the Company's current or potential suppliers, distributors, customers, or accounts, prospective leads or target accounts, pricing schedules, service, support, or maintenance needs of any of the Company's distributors, customers, or accounts, information acquired or compiled by the Company, financial information and regarding actual or potential suppliers, customers or accounts, training methods and materials, information as to the profitability of specific products, services or accounts, information about the Company itself, and its shareholders, members, Employees, officers, directors, managers and all other types or categories of information in whatever form, and in whatever media, with respect to which Employee at any time knows, or had reason to know, that the Company intends or expects the secrecy or confidentiality thereof to be maintained. Employee acknowledges that in order to enable the Company to perform services for its customers or clients ("Third Parties"), those Third Parties may furnish the Company with confidential information concerning their respective business affairs, properties, methods of operation, or other data; that the good will afforded the Company depends upon, among other things, the Company and its Employees and contractors keeping that information confidential and safe from unauthorized use or disclosure and the Employee must treat such confidential information of Third Parties in the same manner as Confidential Business Information of the Company as set forth herein.

(d) If at any time Employee has any question as to whether or not a particular item constitutes or comprises a Trade Secret or Confidential Business Information of the Company or Third Parties, Employee must affirmatively request verification thereof from the Company, which request(s) must be in writing to the Company's Chief Employee Officer.

(e) Nothing in this Agreement is intended to prohibit or be construed as prohibiting the Company from pursuing any legal or equitable remedies available to it for or in connection with Employee's breach or threatened breach of any of the provisions of this Section 7.

(f) Nothing contained herein will in any way restrict or impair Employee's right to use, disclose or otherwise deal with any Confidential Information which at the time of its receipt (1) is available or, without fault of the Employee, directly or indirectly, becomes available, to the public; (2) was independently known to the Employee prior to his employment pursuant to this Agreement, (3) is made available to the Employee as a matter of lawful right by a third party who is neither an Affiliate nor who Employee knows is under any obligation to maintain the confidentiality whether contractual or otherwise; (4) is received without obligation of confidentiality from a third party who was free to disclose the information;   (5) is subsequently developed by the Employee after the

Termination Date independently of and without reference to any Confidential Information received from the Company or (6) is required by law, regulation or court order to be disclosed, in which case the Employee will immediately notify the Company, prior to disclosure, in order to give the Company sufficient time to obtain judicial or administrative relief from such disclosure.

(g) **Duty to Return Company Property.** All of the Company's notebooks, personal computers, laptops, PDA's and other computing devices, memoranda, reports, documents, blueprints, drawings, notes, products, correspondence, product designs, sales brochures, price lists, distributor, supplier, customer and client lists, and other information, sales literature, training manuals and materials, forms, computer software, code, listings, printouts, files, software documentation, manuals, and all other like information or materials, and any computer disks, tapes, CD ROMs or any other media containing information obtained from, pursuant to, or in connection with Employee's employment with the Company, and any and all materials which may in whole or in part contain or constitute Trade Secrets or Confidential Business Information of the Company, and all copies, duplications, replications, and derivatives of any of same, whether now in Employee's possession or acquired by Employee at any time following his execution of this Agreement and while employed by or rendering services to or on behalf of the Company, are and shall at all times remain the exclusive property of the Company ("Company Property"). Upon any termination of his employment with the Company, or as requested by the Company from time to time prior thereto, Employee must promptly: (a) return to the Company, and must purge all of his personal computers, laptops, PDA's and other storage systems and files of all such items, all copies thereof, all work product derived therefrom, and all derivatives thereof; and (b) if requested by the Company, certify to the Company in writing that he has fully complied with the requirements of this Section 7(g); and (c) return to the Company all keys, credit cards, and other Company Property then in Employee's possession or subject to his control.

8. **Restrictive Covenant.**

(a) During Employee's employment with the Company and for a period of one year immediately following any termination of that employment Employee must not, directly or indirectly, either as an individual on his own account, or on behalf of or in connection with any other Person, whether as a partner, joint venturer, Employee, agent, contractor, consultant, officer, director, shareholder, member, manager, or otherwise:

   i. enter into, engage in, or accept employment from, or any engagement by or with, any business substantially similar to or in competition with the business of the Company, as the Company now exists or as it may exist at the time of termination of Employee's employment with the Company. With respect to the Term of Employee's employment hereunder, such restriction shall apply worldwide. With respect to any period following

termination of Employee's employment hereunder, such restriction shall apply only to the geographic markets in which the Company has conducted or conducts business during the Term.   The parties acknowledge that the Company is conducting business throughout the United States and that as such, the United States shall constitute a geographic market to which such restriction shall apply;

ii.   solicit, enter into, or engage in any business relationship with, or accept any employment from or any engagement by or with any Person who is or at any time during the Term of Employee's Employment hereunder was a customer or client of the Company anywhere in the World;

iii.   induce or solicit any Employee or independent contractor, whether such Persons may be referred to as consultants or otherwise, of the Company (or of any of its Affiliates) to terminate their relationship with the Company (or such Affiliate, as applicable), or solicit for hire or employment, or hire, employ, engage or contract for services with any Employee, former Employee, independent contractor or former independent contractor of the Company or any of its Affiliates.   For purposes of this subsection, "former Employee" and "former independent contractor" includes respectively any Person that is employed or engaged by the Company (or any of its Affiliates) at any time within one year prior to the date of such proscribed attempted or actual hiring or engagement, or solicitation or inducement for employment or engagement;

iv.   interfere with, disrupt, or attempt to interfere with or disrupt, any existing or prospective relationship (contractual or otherwise) between the Company (or any of its Affiliates) and any customer, client, supplier, vendor, licensor or licensee with which the Company (or any of its Affiliates) does business or any Person which the Employee knows or has reason to know that the Company has identified as a target for solicitation or otherwise as a prospective customer, client, supplier, vendor, licensor or licensee;

v.   provide or attempt to provide any services or products in competition with any services or products of the Company to any existing customer or client of the Company or any Person which the Employee knows or has reason to know that the Company has identified as a target for solicitation or otherwise as a prospective customer or client; or

vi.   assist any other Person directly or indirectly with any of the foregoing.

The provisions of this Section 8(a) are hereinafter collectively referred to as the "Restrictive Covenant".

(b) The Restrictive Covenant is given by the Employee to induce the Company to enter into this Agreement, and Employee hereby acknowledges the sufficiency of the consideration for the Restrictive Covenant. Employee expressly acknowledges that the Company, its Affiliates (if any) and their respective successors and assigns, have a legitimate business interest justifying the restrictions contained in the Restrictive Covenant and that such restrictions are reasonably necessary to protect such legitimate business interests, which interests include, without limitation, the protection of:

    i.    the Company's Trade Secrets and Confidential Business Information;

    ii.    substantial business relationships with existing and prospective customers and clients; and

    iii.    good will associated with the Company's on-going business and an expectation of continuing patronage from its existing customers and clients.

(c) If any portion of the Restrictive Covenant is held by a Court of competent jurisdiction to be unreasonable, arbitrary, or against public policy for any reason, the Restrictive Covenant will be considered divisible as to line of business, time, and geographic area; if however, a Court of competent jurisdiction determines the specified lines of business, the specified period, or the specified geographic area to be unreasonable, arbitrary or against public policy for any reason, then a narrower line of business, a lesser period, or a smaller geographic area that is determined by that court to be reasonable, non-arbitrary and not against public policy for any reason, may be enforced by the Company against Employee.

9. **Remedies.**

(a) Employee acknowledges that a breach or threatened breach of any of the provisions of the Restrictive Covenant or any of the provisions of Sections 6, 7, or 8 would irreparably injure the Company and would leave the Company with no adequate remedy at law. Therefore, if proceedings are brought by the Company against Employee to enforce any of the provisions of the Restrictive Covenant or of Section 6, 7 or 8, the Company shall in addition to any and all other remedies available to it hereunder or at law, be entitled to equitable relief, including without limitation specific performance and preliminary and permanent injunctive relief, without having to file a bond, restraining the Employee from violating, directly or indirectly, either on his own account as an individual or as a partner, joint venturer, Employee, agent, contractor, officer, director, shareholder, member, manager or otherwise, any of the provisions of the Restrictive Covenant or of Sections 6, 7 or 8 hereof.

(b) In addition to those remedies provided above in the immediately preceding Subsection 9(a), if legal proceedings are brought by either party to enforce any

provisions of this Agreement, the prevailing party shall be entitled to any and all remedies available under this Agreement or otherwise available at law or in equity.

(c) If proceedings are brought by the Company against Employee to enforce the Restrictive Covenant, the period of restriction shall be deemed to begin running on the date of entry of an order granting the Company preliminary injunctive relief and shall continue uninterrupted for the next succeeding one year. Employee acknowledges that the purposes and effect of the Restrictive Covenant would be frustrated by measuring the period of restriction from the date of termination of Employee's employment with the Company, where Employee fails to honor the Restrictive Covenant until directed to do so by court order.

(d) Except as otherwise provided herein, all controversies, disputes and matters in question arising out of or related to this Agreement or the breach of this Agreement or the relations between the signatories to this Agreement, (including but not limited to any dispute regarding a determination of "Cause" by the Company pursuant to the provisions of Section 10(d) below) which cannot be resolved by good faith negotiation between the parties, the dispute shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall take place exclusively in Palm Beach County, Florida and shall be governed by the substance of Law of the State of Florida. The parties shall select a mutually agreeable arbitrator and submit the dispute to such arbitrator within sixty (60) days. In the event the parties are unable to agree upon the arbitrator, the arbitrator shall be appointed in accordance with the rules and procedures of the American Arbitration Association. The arbitrator shall issue a written reasoned award. Any award issued as a result of such arbitration will be final and binding between the parties thereto, and will be enforceable by any court having jurisdiction over the party against whom enforcement is sought. Notwithstanding any provision hereof to the contrary, this arbitration provision shall not preclude the Company from seeking or obtaining temporary, preliminary or permanent injunctive relief or otherwise enforcing the provisions of Sections 6, 7, 8 and 9 in a court of law or equity, to protect its rights, nor shall the filing of such an action or actions constitute a waiver by the Company of its right to arbitrate. The cost of any arbitration proceedings shall be paid by the non-prevailing party, as determined by the arbitrator, who shall also be permitted to award reasonable attorney's fees to the prevailing party.

(e) With respect to any legal proceeding brought by either the Company or Employee against the other party to enforce any of the provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

10. <u>Termination of Employment</u>.

The Term of Employee's employment hereunder may be terminated as follows:

(a) <u>Death</u>. The Term of Employee's employment hereunder shall automatically and immediately terminate upon the death of the Employee.

(b) <u>Disability</u>. The Term of Employee's employment hereunder may be terminated by either Company or Employee upon written notice to the other in the event Employee becomes unavailable to work due to a "Disability". "Disability" means Employee becoming Incapacitated by accident, sickness, or other circumstances that, in the reasonable judgment of Company, renders or is expected to render Employee mentally or physically incapable of performing his essential duties and services required hereunder, with or without reasonable accommodation, where (i) such Incapacity has been determined to exist by the disability insurance carrier for Company, or (ii) Company has determined, based on competent professional advice, that such Incapacity has continued or will continue for such period of time of at least 90 consecutive calendar days, or 180 non-consecutive calendar days, within a calendar year.

(c) <u>Expiration of Term</u>. Employee's employment with the Company may terminate as a result of the expiration of the Term of employment as set forth in Section 3 of this Agreement, provided that Employee's employment hereunder shall not have otherwise been terminated by either Employee or Company under any other provision of this Section.

(d) <u>By Company for Cause</u>. In addition to any other rights or remedies available to Company during the Term of employment, in its sole discretion Company may terminate Employee's employment for "Cause" (as hereinafter defined) effective immediately upon delivery of written notice to Employee. As used herein, "Cause" means any of the following: (i) Company's determination that Employee has materially neglected, failed, or refused to perform any material duties or obligations in or under this Agreement or pursuant to a lawful directive of Company; *provided, however,* that Company shall have provided Employee with written notice of such neglect, failure or refusal and Employee shall have failed to cure same within 30 days following receipt of such notice; (ii) Employee's material violation of any provision of or obligation under this Agreement; (iii) Employee's conviction for, or entry of a plea of no contest with respect to, any felony, or with respect to another crime that adversely affects or (in the Company's reasonable judgment) may adversely affect the Company or the ability of Employee to perform his Duties under this Agreement; or (iv) any other act or omission of Employee involving fraud, theft, misappropriation, dishonesty, disloyalty, or illegality with respect to the Company or any of its Affiliates or customers.

(e) <u>By Company Without Cause</u>. The Company may immediately terminate the Employee's employment hereunder at any time.

(f) <u>By Employee for Good Reason</u>. Employee may terminate his employment with the Company hereunder for Good Reason (as defined herein) provided that Employee shall provide the Company with written notice to the CEO of such Good Reason and the Company shall have failed to cure same within 30 days following receipt of such notice. As used herein, Good Reason means Company's failure to perform any of its material obligations hereunder. Additionally, Good Reason shall mean the Sale or Change of Control of Company as described in Section 1(a)(viii) above.

(g) <u>By Employee Without Good Reason</u>. Employee may terminate his employment without Good Reason upon written notice to the Company which notice will be effective 30 days following receipt of such notice by the Company. Employee will continue to perform his duties hereunder until the Termination Date. However, upon the Company's receipt of Employee's notice, it may at its option, elect to accelerate the Termination Date by written notice thereof to Employee in which case the Termination Date shall be the date designated by the Company in such notice.

(h) <u>Mutual Agreement</u>. The Company and Employee may terminate Employee's employment at the Company at any time by mutual agreement in writing.

(i) Within 30 days following the Termination Date of Employee's employment by either Employee or the Company for any reason, Employee must execute a Certificate of Conclusion of Employment, in substantially the same form attached as <u>Exhibit E</u> to this Agreement certifying that Employee has complied with his contractual obligations and acknowledging his continuing obligations under Sections 6, 7, and 8 of this Agreement. Upon cessation or termination of employment hereunder, Employee will resign or will be deemed to have resigned from any position as an officer or director, or both of Company and all of its Affiliates. Employee's failure to comply with the provisions of this Subsection 10(j) shall constitute a material breach of this Agreement.

11. **Effect of Termination.**

(a) <u>Cause, Death, Disability, Expiration of Term, Termination by Mutual Agreement, or By Employee Without Good Reason</u>. If Employee's employment with the Company is terminated (1) by the Company for Cause, (2) as a result of the expiration of Employee's Term of employment, (3) by the Company and Employee's mutual agreement to terminate Employee's employment with the Company except as otherwise provided in the agreement described in Section 10(h) hereof, (4) Death or Disability, or (5) by Employee Without Good Reason of the Employee, then all further rights of Employee to employment and compensation and benefits from the Company under this Agreement shall cease,

except that the Company will pay Employee the following:

    i.   any part of the compensation (as defined in Exhibit A) earned by Employee which shall have accrued, but which remains unpaid as of the effective date of the termination of Employee's employment, computed pro rata up to and including the Termination Date; and

    ii.   all unpaid reimbursable expenses due to Employee under this Agreement as of the Termination Date.

Any amount due under Subsections i and ii of this Section 11(a), if any, will be paid in the same manner and on the same date as would have occurred if Employee's employment under this Agreement had not ceased.

The Restrictive Covenant as set forth in Section 8 of this Agreement shall remain in effect in the event Employee's employment with Company terminates as a result of this Section 11(a).

    (b)  <u>By Company Without Cause</u>. If Employee's employment hereunder is terminated by the Company without Cause, Company shall pay the Employee the following:

    i.   any amount of the compensation (as defined in Exhibit A) earned by Employee which shall have accrued, but which remains unpaid as of the effective date of the termination, computed pro rata up to and including the Termination Date;

    ii.   all unpaid reimbursable expenses due to Employee under this Agreement as of the Termination Date; and

    iii.   the remainder of Employee's compensation for the Term (as defined in Exhibit A) which remains unpaid as of the effect date of termination.

Any amount due under Subsections i and ii of this Section 11(b) will be paid in the same manner and on the same date as would have occurred if Employee's employment under this Agreement had not ceased.  Any amount due under Subsection iii of this Section 11(b) will be paid within sixty (60) days following the Termination Date.

The provisions of the Restrictive Covenant as set forth in Section 8 of this Agreement are not effective in the event that the Company terminates this Agreement without Cause, or in the event the Employee terminates this Agreement for a Good Reason.

    (c)  <u>By Employee for Good Reason</u>. If Employee's employment hereunder is terminated by Employee for a Good Reason, Company shall pay the Employee the following:

    i.   any amount of the compensation (as defined in Exhibit A) earned by

Employee which shall have accrued, but which remains unpaid as of the effective date of the termination, computed pro rata up to and including the Termination Date;

ii.  all unpaid reimbursable expenses due to Employee under this Agreement as of the Termination Date;

Any amount due under Subsections i and ii of this Section 11(c) will be paid in the same manner and on the same date as would have occurred if Employee's employment under this Agreement had not ceased.

The provisions of the Restrictive Covenant as set forth in Section 8 of this Agreement are not effective in the event that the Company terminates this Agreement without Cause, or in the event the Employee terminates this Agreement for a Good Reason.

12. **Confidentiality.** The terms and conditions of this Agreement, as well as the circumstances and discussions leading thereto, are and shall be deemed by the Parties to be confidential and shall not be disclosed except as may be required by law. The Parties may disclose the Agreement only to their attorneys or other professionals and Employees (on a need to know basis) provided that the Parties make the person or entity to whom disclosure is made, aware of the confidentiality provisions of this Agreement and such person or entity agrees to keep the terms of this Agreement confidential. If disclosure of this Agreement is required by law, Employee will immediately notify the Company, prior to disclosure, in order to give the Company sufficient time to obtain judicial or administrative relief from such disclosure.

13. **Disclosure to Third Parties.** At all times during or following the termination of Employee's employment with the Company, the Company shall have the right to notify any customers of the Company or its Affiliates of Employee's responsibilities under this Agreement, including, without limitation, any provisions of Sections 6, 7, 8, and 9 above. Employee shall notify any of Employee's future employers or prospective employers or any of Employee's current or future business associates or prospective business associates prior to engaging in any business or employment relationship which may result in use of Trade Secret and/or Confidential Business Information that Employee learned while employed by Company, of the terms of Employee's continuing responsibilities under this Agreement, including, without limitation, any provisions of Sections 6, 7, 8 and 9 above.

14. **Existing Agreements.** Employee has identified on the attached Exhibit F all agreements, if any, that he has entered into with prior employers or others regarding the preservation of confidential information and restrictive covenants relative to the business of Company and Employee has identified on the attached Exhibit D his ownership, if any, of inventions. It is expressly understood and agreed that the Company does not expect Employee to divulge the confidential information of any previous employer of Employee or of anyone else, or to otherwise violate any provision of such agreements, and Employee's refusal to do so will not be deemed a justification for termination of this Agreement by the Company for Cause. Employee has supplied the Company with full and complete copies of any such written agreements so identified. Employee hereby represents and warrants to the Company that:

(a) except as expressly disclosed on the attached Exhibit F, Employee is not a party to any existing agreement which:

    i. in any manner relates to the granting or assignment to any person or entity (other than the Company) of any interest in any inventions; confidential information or Intellectual Property Rights relative to the business of Company; or

    ii. obligates or restrains Employee from disclosing any information of any kind relative to the business of the Company; or

    iii. contains any restrictive or non-competition covenants; and

(b) During the Term of employment, Employee will not use or disclose to the Company or to any Affiliate of the Company or any other Person any confidential or proprietary information or trade secrets of any former employers or any other Person, and will not bring on to the Company's premises or access, any such confidential or proprietary information or trade secrets of such Persons unless consented to in writing by said Person and then only with the prior written authorization of the Company;

(c) Employee acknowledges that a breach of any of the provisions of this Section 14 will constitute a material breach of this Agreement. Employee has the full power to enter into this Agreement and to perform his duties hereunder and Employee's execution and delivery of this Agreement and the performance of Employee's duties hereunder shall not result in a breach of or constitute a default under any other agreement to which he is a party or by which he is bound;

(d) Employee acknowledges that he has read this Agreement before signing it, that he has consulted and has been advised by counsel about it, and fully understands its purposes, terms and provisions, all of which he expressly acknowledges to be reasonable in all respects.

15. **Affiliates**. Any Affiliate of the Company shall have the same rights as the Company under this Agreement, and Employee's obligations to the Company under this Agreement shall be owed to such Affiliate(s) in the same manner as they are owed to the Company.

16. **Non-Assistance and Assistance**. Employee agrees not to assist any Person in contesting or attacking any of the Company's Intellectual Property Rights or any other rights of the Company in or to any copyright, patent, trademark, Trade Secret or Confidential Business Information, except to the extent legally required to do so pursuant to subpoena or court order. In the event, after termination of Employee's employment with the Company, the Company desires the cooperation of the Employee with respect to any dispute or litigation, whether covered by this Agreement or otherwise, Employee agrees to reasonably cooperate

and assist the Company, as necessary, and the Company will reimburse Employee for his reasonable expenses, provided it shall have expressly approved such expenses in advance, and approved such time in advance if Employee is no longer employed by the Company.

17. **Consideration.** Employee expressly acknowledges and agrees that his employment by the Company under this Agreement constitutes full, adequate and sufficient consideration to Employee for all of his duties, obligations and covenants under this Agreement.

18. **Miscellaneous.**

    (a) Entire Agreement. This Agreement constitutes the entire agreement between the signatories pertaining to the subject matters of this Agreement, and it supersedes all negotiations, preliminary agreements, and all prior and contemporaneous discussions and understandings of the parties hereto in connection with the subject matters of the Agreement. Except as otherwise expressly provided herein, no covenant, representation, or condition not expressed in this Agreement, or in an amendment made and executed in accordance with the provisions of subsection (b) of this Section, shall be binding upon the parties hereto or shall affect or be effective to interpret, change, or restrict the provisions of this Agreement.

    (b) Amendments. No change, modification, or termination of any of the terms, provisions, or conditions of this Agreement shall be effective unless made in writing and signed by all Parties to this Agreement.

    (c) Governing Law & Jurisdiction. This Agreement and all other disputes between the parties hereto, if any, shall be governed and construed in accordance with the statutory and decisional law of the State of Florida governing contracts to be performed in their entirety in Florida, without reference to its conflicts of law principles. Jurisdiction shall be in the courts of Palm Beach County, Florida.

    (d) Severability. If any provision of this Agreement, or the application of such provision, is held invalid by a court of competent jurisdiction, the remainder of this Agreement, and the application of such provision to persons, entities, or circumstances other than those with respect to which it is held invalid, shall not be affected.

    (e) Headings and Captions. The titles and captions of sections, subsections, paragraphs, and subparagraphs contained in this Agreement are provided for convenience of reference only, and they shall not be considered a part of this Agreement for purposes of interpreting or applying this Agreement; such titles or captions are not intended to define, limit, extend, explain, or describe the scope or extent of this Agreement or any of its terms, provisions, representations, warranties, or conditions in any manner or way whatsoever.

(f) <u>Survival</u>. The provisions of Sections 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 survive expiration or any termination of this Agreement. Notwithstanding the foregoing, expiration or termination of Employee's employment with the Company does not relieve a party of any obligation of that party which accrues prior to expiration or termination of this Agreement, or which by the express terms of this Agreement contemplate performance subsequent to expiration or termination, and those obligations remain in effect until fully discharged by performance.

(g) <u>Gender</u>. All words used herein in the singular number shall extend to and include the plural number and all words herein used in the plural number shall extend to and include the singular number, when the context or facts require it. All words used herein or in any gender shall extend to and include all genders and pronouns shall be taken to refer to the person or persons intended, regardless of number or gender.

(h) <u>Assignment</u>. This Agreement and the duties and obligations of the Company under this Agreement are assignable or delegable by the Company without the consent of Employee.  The Company may also assign any and all Developments and Works Made for Hire, as contemplated in Section 6 of this Agreement, without the prior written consent of the Employee. However, neither this Agreement nor any duties or obligations under this Agreement are assignable or delegable by Employee without the prior written consent of the Company, which consent may be withheld for any reason or no reason whatsoever in the sole and absolute discretion of the Company.

(i) <u>Successors and Assigns</u>. Subject to the restrictions on assignment and delegation set forth in Subsection 18(h), this Agreement shall be binding on the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns.

(j) <u>Construction</u>. This Agreement is the result of negotiations between the parties. This Agreement shall not be construed more strongly against either Employee or the Company merely because of our respective involvement in its preparation or because a particular party was more responsible for its preparation.

(k) <u>Notices</u>. All notices, requests, consents or other communications required or permitted under this Agreement shall be in writing and shall be (as elected by the party giving such notice) actually personally delivered, or delivered via Federal Express or other reputable overnight courier service, signature required, or sent U.S. Mail postage prepaid registered or certified, return receipt requested addressed to:

If to Employee:        Willem Adams
                       1352 N. El Paso St.

Colorado Springs, CO
80903

If to Company:     ModernAd Media, LLC
Attn: Legal Dept.
6420 Congress Avenue
Suite 1800
Boca Raton, FL 33487

or to such other address as any party may designate by notice complying with the terms of this paragraph. Each such notice shall be deemed delivered (a) on the date delivered if by personal delivery or courier service and (b) on the date upon which the return receipt is signed or delivery is refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed.

(l)  Acknowledgments. The Parties acknowledge that: (1) they have read this Agreement; (2) they have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of their own choice; (3) they have each participated in the drafting of this Agreement such that any ambiguity found to exist in this Agreement shall not be construed for or against either Party hereto. Employee further acknowledges that he understands the purposes and effects of this Agreement, and that he has been given a signed copy of this Agreement for his own records.

(m)  Non-Waiver. No waiver by the Company of a breach or threatened breach of this Agreement by Employee may be held or construed to be a waiver of any other or subsequent breach by Employee. All remedies afforded in this Agreement shall be taken and construed as cumulative. The failure of the Company to enforce at any time any of the provisions of this Agreement, or to require at any time performance by Employee of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions nor in any way affect the validity of this Agreement or any part hereof, or the right of the Company to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach.

(n)  Counterparts. This Agreement may be executed in any number of counterparts each of which, when so executed and delivered, shall be an original but each counterpart together, constitutes one and the same instrument

(o)  Exhibits. The following listed Exhibits are hereby incorporated by reference and made a part of this Agreement: Exhibit A – Compensation of Employee; Exhibit B – Duties of Employee; Exhibit C – Employee Commissions from Prior Business Activities; Exhibit D – Prior Inventions of Employee; Exhibit E- Certificate of Conclusion of Employment; and Exhibit F - Employee's Agreements with Prior Employers and Others.

**IN WITNESS WHEREOF**, the parties have hereunto executed this Agreement, the day and year first above written.

**EMPLOYEE:**

By: _____

Willem Adams

**WITNESSES:**

_____

Steve Sueslow

Printed Name

**COMPANY:**

By: _____

Warren Rustin, President

_____

Jesse Tomacty

Printed Name

## EXHIBIT A

1. Salary

   Subject to the terms and conditions of this Agreement, Employee will be entitled to receive commissions in an amount to be mutually agreed upon within sixty (60) days and attached to this Agreement as an addendum. Employee shall receive a monthly draw on his commission of $20,000/month, payable every two weeks, in equal installments during the period of his employment with the Company, pro-rated for any partial employment period. This draw shall be considered a guaranteed minimum amount due to Employee for commission earned.

2. Other Compensation

   If there is a "Sale" or "Change of Control" (as hereinafter defined) of the Company while Employee is employed by the Company, Shareholder shall be entitled to receive one percent (1%) of the Net Sale Proceeds (as hereinafter defined) associated to the co-registration division of the Company (in the event of a sale) or one percent (1%) of the Total Valuation (as hereinafter defined) of the co-registration division of the Company (in the event of a Change of Control). A "Sale" of the Company shall mean the sale or other conveyance of either (y) all or substantially all of the assets of the Company, or (z) one hundred percent (100%) of the issued and outstanding membership units or ownership interests of the Company to one or more persons or entities which are not, as of the date hereof, an affiliate or equity holder of the Company. A "Change of Control" of the Company shall mean the sale or other conveyance of more than 50% but less than 100% of the issued and outstanding membership units or ownership interests of the Company to one or more persons or entities which are not, as of the date hereof, an affiliate or equity holder of the Company. Sale or Change of Control of Company does not include any disposition of any of the assets of, or units, membership or other interests in the Company in connection with the liquidation or dissolution of the Company unless and then only to the extent such liquidation or dissolution occurs in connection with and is part of the sale of all or substantially all of the assets of or membership interest in the Company, to an independent third party which continues to operate the Company or the Company's business as a going concern after such transaction. "Net Sale Proceeds" means the cash amount or other consideration (whether stock, other securities or notes) received by the Company or a member of the Company for and in consideration of the Sale of the Company, less any expenses of such Sale of the Company, including without limitation, omissions, investment banking, legal, accounting and other professional fees and/or member loans and other debts of the Company. "Total Valuation" shall be the greater of two times gross revenues associated with the gross co-registration division of the Company for the twelve (12) months immediately preceding the month in which such termination occurs, *or* the value of the Company as determined by an independent third party audit.

3. Benefits

   The Company will provide retirement, medical, insurance and other benefits as are generally made available by the Company to its Employees of similar rank, including term life insurance and disability insurance, subject however to such changes, additions or deletions as

the Company may make generally from time to time, as well as such other benefits, as may be specified from time to time by the Company for the benefit of the Employee. A description of such benefits will be provided under separate cover. Employee's rights to the benefits to be set forth under separate cover are subject to the provisions of the relevant contracts, policies or plans providing such benefits, including those pertaining to eligibility, waiting periods, benefit limitations, and insurability. If the cost of providing an insurance benefit to the Employee or his beneficiaries is substantially more than the average cost of providing such benefit to the Company's other Employees of similar rank, the Company may purchase different coverage for Employee than that provided to the Company's other Employees.

4. Other Benefits

Except as otherwise provided in the attached Agreement, the Company may provide Employee with such other company benefits such as holiday, sick leave, and jury duty as are generally made available by the Company to Employees of similar rank.

5. Business Expenses

The Company will reimburse the Employee for all reasonable business expenses expressly authorized by the Company, including travel and entertainment, provided that the Employee provides adequate documentation to the Company to satisfy the substantiation requirements of Internal Revenue Code Section 274 and the Regulations promulgated thereunder.

6. Attorneys in Fact

Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Employee's attorneys in fact for Employee and in Employee's name and place to make, sign, compare and file any and all lawful documents required to apply for, maintain or renew any applications for or registration of any intellectual property rights in or to any Developments including without limitation any copyrights or patents, and to execute and file any such applications and to do all lawfully permitted acts to further the prosecution, issuance, maintenance or renewal of copyrights, patents or other intellectual property rights in and to any Developments, with the same legal force and effect as if executed by Employee and Employee hereby declares that any act or thing lawfully done by his said attorneys in fact under this shall be binding on him and his heirs, legal and personal representatives and assigns. This power of attorney is coupled with an interest and Employee does hereby make and declare this power of attorney to be irrevocable by Employee.

## EXHIBIT B

### DUTIES OF EMPLOYEE

Employee is being hired to fill the position of Vice President of Sales, Co-registration. The VP's duties and responsibilities will be determined by the Company and will be revised from time to time at the full discretion of the Company. Employee's duties and responsibilities include, but are not limited to the following:

1. Contributes to general business planning and day-to-day operations required to maintain lead generation growth and co-registration operations and competitiveness.

2. Increase overall company sales associated to the co-registration division of the Company on a continuing basis.

3. Increase co-registration budget from marketing partners, customers and vendors on a continuing basis.

4. Any duties that may be set forth by the Company from time to time.

EXHIBIT C

COMMISSIONS EMPLOYEE RECEIVES FROM AND IN CONNECTION WITH PRIOR
BUSINESS ACTIVITIES

EXHIBIT D

PRIOR INVENTIONS OF EMPLOYEE

EXHIBIT E

## CERTIFICATE OF CONCLUSION OF EMPLOYMENT

In connection with the conclusion of my employment with ModernAd Media LLC, ("MAM") I certify that:

1.  I have surrendered and returned to MAM any and all: notebooks; memoranda; reports; files, blueprints; drawings; designs; specifications; notes; products; correspondence; sales brochures; price lists; distributor, supplier, customer and client lists, contact and other information; distributor, supplier, customer and client business cards, marketing materials and information; sales and promotional literature; call logs; scripts; training manuals and materials; forms; computers; computer software; computer passwords, software documentation, computer manuals, computer disks, tapes, cd roms, and any other media containing information obtained from, pursuant to or in connection with my previous employment with MAM; materials which may in whole or in part contain or constitute Trade Secrets or Confidential Business Information of MAM; and all copies, duplications, replications or derivatives of any of the foregoing, which have at any time been in my possession or subject to my control; and

2.  I have complied with all terms and conditions of the Employment Agreement executed by MAM and me on the _____ day of December, 2008, and I understand that certain obligations survive the termination of my employment.  I will comply with each such terms in the future as agreed to between the parties.

3.  I have complied with all terms and conditions of the confidentiality provisions contained in the Employment, Confidentiality and Inventions Agreement executed by MAM and me on the _____ day of _____, 200__.

I understand that I have continuing obligations:

a.  To preserve as confidential and refrain from using Trade Secrets or Confidential Business Information (as defined in the above said "Employment, Confidentiality and Inventions Agreement") of MAM;

b.  Not to accept any employment which would, by the nature of the position, inherently involve the unauthorized use or disclosure of MAM's Trade Secrets or Confidential Business Information; and

c.  To refrain from all other acts or omissions that would reduce the value of such Trade Secrets and Confidential Business Information to MAM.

**Executed by the Undersigned this _____ day of _____, 2_____**

_____                    By: _____

Witness                                             Willem Adams

_____

Witness

## EXHIBIT F

t

EMPLOYEE'S AGREEMENTS WITH PRIOR EMPLOYERS OR OTHERS RELATIVE
TO THE BUSINESS OF THE COMPANY

EFILED Document
CO El Paso County District Court 4th JD
Filing Date: Feb 24 2012 12:11PM MST
Filing ID: 42699139
Review Clerk: Rachael Maestas

# Exhibit 2

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is made as of January 1, 2011 by and among the following:

| | |
|---|---|
| **VENDOR:** | **MODERNAD MEDIA, LLC,** a limited liability company formed under the laws of the state of Florida, having its principal place of business at 2200 SW 10th Street, Deerfield Beach, Florida, 33442, USA, **MODERNAD MARKETING, LLC** a limited liability company formed under the laws of the state of Florida, having its principal place of business at 2200 SW 10th Street, Deerfield Beach, Florida, 33442, USA, and **WARREN RUSTIN,** an individual resident of the State of Florida |

(hereinafter collectively referred to as the "**Vendor**")

**AND:**

| | |
|---|---|
| **PURCHASER** | **7657030 CANADA INC.,** a corporation duly incorporated under the laws of Canada, having its principal place of business at 39 Chambertin, Kirkland, Quebec, H9H 5E3, |

(hereinafter referred to as the "**Purchaser**")

**WHEREAS**, Vendor has agreed to sell, transfer and assign, and Purchaser has agreed to accept and assume, all right, title and interest in and to the Purchased Assets (as defined below).

**NOW, THEREFORE**, in consideration of the promises made herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to the following terms and conditions:

## SECTION I - PURCHASE AND SALE AND ASSUMPTION OF LIABILITIES

1.1    Purchase and Sale: Subject to the terms and conditions stipulated herein, the Vendor hereby sells, assigns and transfers to the Purchaser and the Purchaser hereby purchases from the Vendor the following assets (collectively the "**Purchased Assets**"):

   i.    100% membership interest in the capital of Secure My Score, LLC (the "**Secure My Score Units**");

   ii.   100% membership interest in the capital of Inbox Send, LLC (the "**Inbox Send Units**");

1

    iii.   100% membership interest in the capital of Healthprofessor, LLC (the "**Healthprofessor Units**")

    iv.   all of the assets described in Schedules B – G and I – O hereof (collectively the "**Schedules**"), which schedules are incorporated herein by reference.

Notwithstanding anything to the contrary contained herein, the parties acknowledge and agree that the following furniture and fixtures located in or relating to the building located at 2200 SW 10th, Deerfield Beach, Florida 33442 shall be excluded from the transactions contemplated hereby, which furniture and fixtures shall be available for use by the Purchaser at the discretion of the owner thereof:

    i.   cubicles/workstation and chairs;
    ii.   lunch tables and chairs (cafeteria);
    iii.   hurricane shutters and boards;
    iv.   training tables and chairs (training room); and
    v.   conference room table (executive conference room).

1.2   <u>Assumed Liabilities</u>: The Purchaser hereby assumes the liabilities of the Vendor more fully described in Schedule P hereof and undertakes to make all necessary payments on behalf of the Vendor pursuant to the terms of the Leasing Agreement, Payroll and Lease Payment (the whole as defined in Schedule P hereof), as applicable.

## SECTION II - PURCHASE PRICE

2.1   The purchase price payable for the Purchased Assets shall be the aggregate amount of three million one hundred ninety one thousand four hundred eighty three dollars ($3,191,483), which amount includes, without limitation, the liabilities assumed by the Purchaser pursuant to Section P hereof. The purchase price shall be allocated pursuant to Schedule Q hereof.

## SECTION III –SERVICES PROVIDED BY PURCHASER

3.1   As and if applicable, Purchaser agrees to provide Vendor with administrative and accounting services through transition of the Purchased Assets.

## SECTION IV – GUARANTEE,  CREDIT CARD USE & ADDITIONAL EXPENSES

4.1   As and if applicable, the Vendor hereby undertakes to guarantee, jointly and severally with the Purchaser, any contractual obligation of the Purchaser created or arising from the date of this Agreement until the first (1st) anniversary hereof.

4.2   As and if applicable, the Vendor hereby undertakes to permit Purchaser use of its credit card through the transition period. Purchaser shall pay Vendor's credit card bill for any

purchase(s) made by Purchaser. If Vendor makes any payments on behalf of Purchaser, Purchaser shall promptly repay Vendor.

4.3     As and if applicable, it is acknowledged that from tiem to time throughout the transition of the Purchased Assets to Purchaser, Vendor may incur charges or expenses on behalf of Purchaser. If Vendor makes any payments on behalf of Purchaser, Purchaser shall promptly repay Vendor.

## SECTION V - REPRESENTATIONS, AND WARRANTIES

5.1     The following representations and warranties are made and given by the Vendor to the Purchaser which shall expressly survive:

5.1.1   the Vendor has good and marketable title to all of the Purchased Assets, and none of the Purchased Assets is subject to any lien, mortgage, security interest, pledge, encumbrance, charge, claim or restriction of any kind;

5.1.2   upon the execution and delivery of this Agreement, the Purchaser will be vested with good and marketable title to all of the Purchased Assets, free and clear of all liens, mortgages, security interests, pledges, encumbrances, charges, claims and restrictions of any nature whatsoever;

5.1.3   the Purchased Assets are in good operating condition, as applicable; and

5.1.4   the Vendor will hereinafter do all such things and execute all such documents as may be required for the proper and effective completion of this Agreement.

## SECTION VI – VENDOR'S UNDERTAKING RE: SALE, ASSIGNMENT AND TRANSFER OF CISCO EQUIPMENT TO THE PURCHASER

6.1     In consideration for the assumption by the Purchaser of all of the Vendor's obligations pursuant to the Leasing Agreement, the Vendor hereby undertakes to sell, assign and transfer to the Purchaser, immediately upon the expiry of the Leasing Agreement and the acquisition by the Vendor of all of the right, title and interest in and to the equipment leased thereunder (the "**Equipment**").

## SECTION VII – MISCELLANEOUS

7.1     No modification to or amendment of this Agreement shall be valid or binding unless set forth in writing and duly executed by the parties hereto.

7.2     This Agreement shall be binding upon and enure to the benefit and advantage of the parties hereto and their respective heirs, administrators, legal representatives, successors, legatees, executors and permitted assigns

7.3    The division of this Agreement into Sections and Subsections, and the insertion of headings, are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement.

7.4    This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument. A facsimile signature of any party shall be considered to have the same binding legal effect as an original signature.

7.6    Each party represents and warrants that it is duly organized, validly existing and in good standing within its country and/or state provence of incorporation. Each party has the requisite authority and legal capacity to deliver and perform this Agreement and other transactional documents. Each party has taken all action necessary to authorize the execution and delivery of this Agreement, the performance of its obligations hereunder and the consummation of the transaction contemplated hereby.

7.7    For purposes of contract interpretation, including resolution of any ambiguity, the parties acknowledge that this Agreement was prepared jointly by their respective attorneys and therefore the terms of the Agreement should not be construed against either party as the drafting party.

7.8    Vendor shall indemnify defend and hold harmless Purchaser for any and all claims or actions against Purchaser arising out of the Purchased Assets prior to the date of this Agreement. Purchaser shall indemnify defend and hold harmless Vendor for any and all claims or actions against Vendor arising out of the Purchased Assets after to the date of this Agreement.

7.9    The failure of either party to insist upon or enforce performance by the other party of any provision of this Agreement or to exercise any right under this Agreement will not be construed as a waiver or relinquishment to any extent of such party's right to assert or rely upon any such provision or right in that or any other instance; rather the same will be and remain in full force and effect.

7.10   All provisions are inserted conditionally on their being valid in law. In the event that any provision of the Agreement conflicts with the law under which the Agreement is to be construed or if any such provision is held invalid or unenforceable by a court with jurisdiction over the Parties to the Agreement: (i) such provision will be restated to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law; and (ii) the remaining terms, provisions, covenants, and restrictions of the Agreement will remain in full force and effect.

7.11   This Agreement constitutes the entire and only agreement and supersedes any and all prior agreements, whether written, oral, express, or implied, of the Parties with respect to the transactions set forth herein.

7.12   This Agreement is governed by the laws of the Province of Quebec.

7.13   This Agreement has been drafted in the English language at the express request of the parties. Cette convention a été redigée en langue anglaise à la demande explicite des parties.

*(Signatures on Following Page)*

**IN WITNESS WHEREOF**, the parties have signed on the date and at the place first mentioned hereinabove.


MODERNAD MEDIA, LLC                    7657030 CANADA INC.


Per: Warren Rustin                     Per: Garry Jonas

EFILED Document
CO El Paso County District Court 4th JD
Filing Date: Feb 24 2012 12:11PM MST
Filing ID: 42699139
Review Clerk: Rachael Maestas

# Exhibit 3

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unite Network | Paris Hiltons "Celebrity Styler" | $11.00 | 2 | 9 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Pre-Paid Master Card | $9.25 | 16083 | 0 | 0 | 2500 | -2500 | 100% | $625.00 | | -$625.00 | -100% | |
| Unite Network Total | | | 16085 | 9 | 0 | 2500 | -2500 | -100.00% | $625.00 | $0.00 | -$625.00 | -100.00% | Login |
| Value Click | Consumer Rewards 500 visa Gift card- | $3.50 | 755829 | 860344 | 0 | 0 | -85014 | 100% | $43,037.00 | | -$43,037.00 | -100% | |
| | CreditReport.com | $29.50 | 2205908 | 29568 | 2357 | 0 | -2357 | 100% | $69,531.50 | | -$69,531.50 | -100% | |
| | DirecTV | $179.00 | 231935 | 25161 | 0 | 0 | -2516 | 100% | $0.00 | | $0.00 | 0% | |
| | Discover Clear Card | $0.45 | 379410 | 6329 | 0 | 0 | -6329 | 100% | $1,392.38 | | -$1,392.38 | -100% | |
| | Discover More Card | $0.25 | 380744 | 5945 | 0 | 0 | -5945 | 100% | $1,495.25 | | -$1,495.25 | -100% | |
| | Disney blu-ray Movies for $1.99 | $33.00 | 5307 | 29 | 2 | 0 | -2 | 100% | $96.00 | | -$96.00 | -100% | |
| | Disney Movies 2 | $33.50 | 2275059 | 54495 | 4411 | 0 | -4411 | 100% | $147,102.50 | | -$147,102.50 | -100% | |
| | Dr. Diabetic | $4.04 | 51795 | 0 | 0 | 4368 | -4368 | 100% | $17,767.92 | | -$17,767.92 | -100% | |
| | Emusic | $16.00 | 1048828 | 29243 | 2017 | 0 | -2017 | 100% | $32,272.00 | | -$32,272.00 | -100% | |
| | FoodCritic101.com | $0.45 | 15255 | 15121 | 0 | 0 | -15121 | 100% | $6,804.45 | | -$6,804.45 | -100% | |
| | FREE Laptop - EXIT | $0.45 | 759501 | 153048 | 0 | 0 | -153048 | 100% | $68,871.60 | | -$68,871.60 | -100% | |
| | Get Health Reform | $1.00 | 3 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Home Depot EXIT Offer. | $1.25 | 190 | 187 | 24 | 0 | -24 | 100% | $30.00 | | -$30.00 | -100% | |
| | JC PENNY - EXIT | $0.45 | 756871 | 52858 | 0 | 0 | -52858 | 100% | $23,786.10 | | -$23,786.10 | -100% | |
| | Liberty Medical | $6.50 | 62 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Liberty Medical 2 | $7.00 | 71850 | 0 | 0 | 22271 | -2227 | 100% | $15,589.00 | | -$15,589.00 | -100% | |
| | Michael Jackson Photobook | $20.00 | 909136 | 17394 | 2 | 0 | -2 | 100% | $40.00 | | -$40.00 | -100% | |
| | My Points | $0.01 | 1801434 | 0 | 0 | 13016 | -13016 | 100% | $130.16 | | -$130.16 | -100% | |
| | Organic Green Tea | $34.00 | 1 | 3 | 0 | 0 | -3 | 100% | $0.00 | | $0.00 | 0% | |
| | Philip Morris | $0.50 | 781271 | 0 | 0 | 60705 | -60705 | 100% | $36,423.00 | | -$36,423.00 | -100% | |
| | PlasmaTV4Free - EXIT | $0.50 | 756883 | 100192 | 0 | 0 | -100192 | 100% | $50,096.00 | | -$50,096.00 | -100% | |
| | Pleasure Survey | $2.00 | 1199496 | 0 | 0 | 9880 | -9880 | 100% | $19,760.00 | | -$19,760.00 | -100% | |
| | Progenitor 100 | $30.00 | 0 | 1 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Texas Tourism | $0.70 | 1400031 | 0 | 0 | 6406 | -6406 | 100% | $4,484.20 | | -$4,484.20 | -100% | |
| | United Health Quote | $0.86 | 600777 | 0 | 0 | 30595 | -30595 | 100% | $26,311.70 | | -$26,311.70 | -100% | |
| | Video Professor | $92.00 | 7821539 | 116413 | 4305 | 0 | -4305 | 100% | $397,040.00 | | -$397,040.00 | -100% | |
| | Visa Card | $0.45 | 769880 | 279528 | 0 | 0 | -279528 | 100% | $125,787.60 | | -$125,787.60 | -100% | |
| Value Click Total | | | 30064045 | 968705 | 13118 | 127227 | -841901 | -100.00% | $1,087,779.36 | $0.00 | -$1,087,779.36 | -100.00% | Login on/after 15th and send to client for confirm. |
| Vente | Gas Card | | 0 | 0 | 0 | 0 | 1 | 1 | 0% | $0.00 | $1.20 | $1.20 | 0.00% | Invoiced 2/2/10 |
| Vente Total | | | 0 | 0 | 0 | 0 | 1 | 0.00% | $0.00 | $1.20 | $1.20 | 0.00% | Invoiced 2/2/10 |
| Vinyl Interactive | EDU | $0.00 | 3 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | GYD LT | $0.00 | 0 | 0 | 0 | 45560 | -45560 | 100% | $13,241.40 | | -$13,241.40 | -100% | |
| | Scholarship Zone | $0.00 | 5 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Scholarships 4 Moms | $0.40 | 3091 | 0 | 0 | 68 | -68 | 100% | $27.20 | | -$27.20 | -100% | |
| Vinyl Interactive Total | | | 3099 | 0 | 0 | 45728 | -45728 | -100.00% | $13,268.60 | $0.00 | -$13,268.60 | -100.00% | Login/have most stats emailed client back 2/3 |
| Virtel | EDU LT Data | | 1764 | 0 | 0 | 24317 | -24317 | 100% | $6,808.76 | | -$6,808.76 | -100% | |
| | Sleep Disorder | $6.80 | 1764 | 0 | 0 | 108 | -108 | 100% | $735.40 | | -$735.40 | -100% | |
| Virtel Total | | | 1764 | 0 | 0 | 24426 | -24426 | -100.00% | $7,544.16 | $0.00 | -$7,544.16 | -100.00% | Emailed client for stats 2/3/10 |
| Ward Media | Degree Street LT | $0.00 | 5 | 0 | 0 | 14140 | -2923 | 20% | $2,545.02 | $2,263.40 | -$281.62 | 0% | |
| | Degree Street 2 LT | $0.00 | 0 | 0 | 0 | 29031 | -4619 | 16% | $5,225.55 | $4,882.40 | -$343.15 | 100% | |
| Ward Media Total | | | 5 | 0 | 0 | 43171 | -7442 | -17.24% | $7,770.60 | $7,145.80 | -$624.80 | 0.00% | Donna has billable stats 2/5/10 |
| Grand Total | | | 266025601 | 7031952 | 118724 | 8005256 | 770782 | -92.65% | $5,933,670.20 | $1,966,500.65 | -$3,967,169.55 | -67% | |

↑

Janurary, 2010
Co-registration
Revenue

| Category | Item | Price | | | | | | | % | $ | $ | $ | % | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | My Financial Reality 2 C | $0.35 | 1213637 | 0 | 0 | | 1187 | -1187 | 100% | $408.45 | | -$408.45 | -100% | |
| | National Education Online LT | $0.54 | | | | | 34660 | -34660 | 100% | $11,784.40 | | -$11,784.40 | -100% | |
| Rex Direct Total | | | 4780339 | 0 | 0 | | 113787 | -113787 | 100.00% | $40,638.65 | $0.00 | -$40,638.65 | -100.00% | |
| Start Sampling | Nicoderm | $0.60 | 0 | 0 | 0 | | 12 | 12 | 0% | $0.00 | $7.20 | $7.20 | 0% | |
| Start Sampling Total | | | | 0 | 0 | 0 | 12 | 12 | 0.00% | $0.00 | $7.20 | $7.20 | 0.00% | |
| Tanventure Media | Pinnacle Security | $5.00 | 1408 | 0 | | | 375 | -375 | 100% | $1,875.00 | $0.00 | -$1,875.00 | -100% | Donna has stats 5/6/10 |
| Tanventure Media Total | | | 1408 | 0 | | | 375 | -375 | 100.00% | $1,875.00 | $0.00 | -$1,875.00 | -100.00% | |
| Tiburon | BeliefNet Newsletter | $0.23 | 12 | 0 | 0 | | 0 | 0 | 100% | $0.00 | | $0.00 | 0% | |
| | Cheap Trips | $0.31 | 5 | 0 | 0 | | 1 | -1 | 100% | $0.00 | | -$0.31 | -100% | |
| Tiburon Total | | | 17 | 0 | 0 | | 1 | -1 | 100.00% | $0.31 | $0.00 | -$0.31 | -100.00% | |
| Unique Consulting Group | Credit Repair | $0.66 | 157603 | 0 | 0 | | 40162 | -40162 | 100% | $24,988.41 | | -$24,988.41 | -100% | |
| Unique Consulting Group Total | | | 157603 | 0 | 0 | | 40162 | -40162 | 100.00% | $24,988.41 | $0.00 | -$24,988.41 | -100.00% | |
| Unite Network | Claim Your New Card | $2.00 | 191 | 190 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Find Rates IPL | $5.00 | 1 | 0 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Home Based Business | $50.00 | 0 | 2 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Paris Hiltons "Celebrity Styler" | $11.00 | 0 | 1 | 1 | | 0 | -1 | 100% | $11.00 | | -$11.00 | -100% | |
| | Pre-Paid Master Card | $0.25 | 226932 | 0 | 0 | | 24319 | -24319 | 100% | $6,079.75 | | -$6,079.75 | -100% | |
| | RedCarpetCashLoans.com | $7.00 | 178 | 173 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| Unite Network Total | | | 227300 | 367 | 1 | | 24319 | -24320 | 100.00% | $6,090.75 | $0.00 | -$6,090.75 | -100.00% | |
| Value Click | ConsumerRewards 500 Visa Gift Card | $0.50 | 682529 | 169494 | 0 | | 0 | -69494 | 100% | $34,747.00 | | -$34,747.00 | -100% | |
| | CreditReport.com | $38.00 | 1513337 | 31251 | 2221 | | 0 | -2221 | 100% | $69,491.00 | | -$69,491.00 | -100% | |
| | Discover Clear Card | $0.45 | 506378 | 10483 | 0 | | 0 | -10483 | 100% | $4,684.46 | | -$4,684.46 | -100% | |
| | Discover More Card | $0.25 | 173709 | 2706 | 0 | | 0 | -2706 | 100% | $676.50 | | -$676.50 | -100% | |
| | Disney Movies 2 | $34.00 | 8341085 | 55843 | 4288 | | 0 | -4288 | 100% | $143,697.00 | | -$143,697.00 | -100% | |
| | Dr. Diabetic | $4.04 | 43877 | 0 | 0 | | 3443 | -3443 | 100% | $13,909.72 | | -$13,909.72 | -100% | |
| | eMusic | $16.00 | 986736 | 32483 | 23317 | | 0 | -2317 | 100% | $37,072.00 | | -$37,072.00 | -100% | |
| | FoodCritic101.com | $0.45 | 14705 | 13865 | 0 | | 0 | -13865 | 100% | $6,149.25 | | -$6,149.25 | -100% | |
| | FREE Laptop | $0.45 | 663114 | 147161 | 0 | | 0 | -147161 | 100% | $66,222.45 | | -$66,222.45 | -100% | |
| | Get Health Reform | $1.00 | 41 | 0 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | JC Penny | $0.45 | 682904 | 43859 | 0 | | 0 | -43859 | 100% | $19,781.55 | | -$19,781.55 | -100% | |
| | Liberty Medical | $4.50 | 13052 | 0 | 0 | | 150 | -150 | 100% | $675.00 | | -$675.00 | -100% | |
| | Liberty Medical 2 | $7.00 | 104717 | 0 | 0 | | 1336 | -1336 | 100% | $9,352.00 | | -$9,352.00 | -100% | |
| | Michael Jackson Photobook | $20.00 | 299814 | 8219 | 0 | | 0 | -8219 | 100% | $0.00 | | $0.00 | 0% | |
| | My Points | $0.01 | 3385709 | 0 | 0 | | 28060 | -28060 | 100% | $280.60 | | -$280.60 | -100% | |
| | PlasmaTV4Free | $0.50 | 751397 | 0 | 0 | | 0 | -90984 | 100% | $45,432.00 | | -$45,432.00 | -100% | |
| | Philip Morris 2 | $0.60 | 452003 | 0 | 0 | | 33504 | -33504 | 100% | $20,102.40 | | -$20,102.40 | -100% | |
| | Phillip Morris 3 | $0.90 | | 1 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Pleasure Survey | $2.00 | 450031 | 0 | 0 | | 3636 | -3636 | 100% | $7,272.00 | | -$7,272.00 | -100% | |
| | Texas Tourism | $0.35 | 1699674 | 0 | 0 | | 7501 | -7501 | 100% | $4,550.70 | | -$4,550.70 | -100% | |
| | United Health Quote | $0.86 | 632637 | 0 | 0 | | 25867 | -25867 | 100% | $22,245.62 | | -$22,245.62 | -100% | |
| | Video Professor | $92.00 | 7026641 | 117588 | 4081 | | 0 | -4081 | 100% | $443,108.00 | | -$443,108.00 | -100% | |
| | Visa Card | $0.45 | 682744 | 232477 | 0 | | 0 | -232477 | 100% | $104,614.65 | | -$104,614.65 | -100% | |
| Value Click Total | | | | 854293 | 13667 | | 165914 | -217729 | 100.00% | $1,104,164.10 | $0.00 | -$1,104,164.10 | -100.00% | |
| Vinyl Interactive | EDU Demo | $0.00 | 7 | 0 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Degree Counseling (GYD) LT | | | | | | 63120 | -63120 | 100% | $18,334.80 | | -$18,334.80 | -100% | |
| | Scholarship Zone | $0.00 | 4 | 0 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Scholarship Zone 2 | $4.50 | 2 | 2 | 0 | | 0 | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Scholarships 4 Moms | $0.40 | 2800016 | 0 | 0 | | 5113 | -5113 | 100% | $2,045.20 | | -$2,045.20 | -100% | |
| Vinyl Interactive Total | | | 2800029 | 2 | | | 68223 | -68223 | 100.00% | $20,380.00 | $0.00 | -$20,380.00 | -100.00% | |
| Virtel Marketing | EDU LT | $0.28 | | 2 | 0 | | 19165 | -3801 | 100% | $5,366.20 | | -$5,366.20 | -100% | |
| Virtel Marketing Total | | | 0 | 2 | 0 | | 19165 | 15364 | -19.83% | $5,366.20 | $0.00 | -$5,366.20 | -100.00% | Donna has stats 3/5/10 |
| Wall & Madison | Reverse Mortgage Stand Alone | $0.01 | 715155 | 0 | 0 | | 25560 | -25560 | 100% | $255.60 | | -$255.60 | -100% | |
| Wall & Madison Total | | | 715155 | 0 | 0 | | 25560 | -25560 | 100.00% | $255.60 | $0.00 | -$255.60 | -100.00% | |
| Ward Media | Degree Street LT | $0.18 | 8 | 0 | 0 | | 14001 | -14001 | 100% | $2,520.00 | | -$2,520.00 | -100% | |
| | Degree Street 2 LT | $0.18 | | 0 | 0 | | 27006 | -27006 | 100% | $4,861.08 | | -$4,861.08 | -100% | |
| Ward Media Total | | | 8 | 0 | 0 | | 41007 | -41007 | 100.00% | $7,381.08 | $0.00 | -$7,381.08 | -100.00% | |
| Grand Total | | | 284329558 | 3077908 | 132272 | 7765006 | 273128 | -8352511 | -96.83% | $5,888,299.08 | $1,940,388.90 | -$3,947,911.18 | -67% | |

*[handwritten annotation, with upward arrow:]* February, 2010 co-registration Revenue

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Insurance Complete | $0.28 | | 3698 | 3880 | 0 | 0 | 0 | 0 | 0 | -3680 | 100% | $1,030.40 | | -$1,030.40 | -100.00% |
| Quinstreet Total | | | 193445 | 3680 | 0 | 67620 | 13584 | 64026 | 10246 | 3328 | -7016 | 100.00% | $24,396.40 | $0.00 | -$24,396.40 | -100.00% |
| Quotit Corporation | Health Insurance | $0.00 | | 104 | 0 | 0 | 15 | 15 | 0 | 0 | 0 | -1 | 103% | $0.00 | | $0.00 | 0.00% |
| Quotit Corporation Total | | | 104 | 0 | 0 | 15 | 15 | 0 | 0 | 44 | 0 | 100.00% | $0.00 | $0.00 | $0.00 | 0.00% |
| React2Media | Brunswick Travel | $0.55 | $0.55 | 2052044 | 0 | 0 | 1560867 | 4621 | 1555366 | 2021 | 2600 | -2500 | 100% | $1,430.00 | | -$1,430.00 | -100.00% |
| | Caribbean Cruise | $0.55 | $0.55 | 58175 | 0 | 0 | 4533 | 2725 | 1807 | 445 | 2281 | -2281 | 100% | $1,254.55 | | -$1,254.55 | -100.00% |
| | Cheapflights.com | $0.30 | $0.30 | 34975 | 0 | 0 | 6529 | 6426 | 103 | 1008 | 5418 | -5418 | 100% | $1,625.40 | | -$1,625.40 | -100.00% |
| | Clean Goal | $0.22 | | 3302290 | 0 | 0 | 2497781 | 135673 | 2362106 | 72646 | 63027 | -63027 | 100% | $13,885.94 | | -$13,885.94 | -100.00% |
| | Gatlinburg - Real Family Va 20% | $0.72 | $0.72 | 44561 | 0 | 0 | 33078 | 7311 | 33247 | 527 | 104 | -104 | 100% | $74.88 | | -$74.88 | -100.00% |
| | Gatlinburg Travel-Family Fun | $0.55 | $0.55 | 3125189 | 0 | 0 | 2351643 | 534465 | 2303145 | 49345 | 9150 | -9150 | 100% | $5,032.50 | | -$5,032.50 | -100.00% |
| | Gatlinburg Travel-Smoky Mountain | $0.55 | $0.55 | 3296098 | 0 | 0 | 2432941 | 49358 | 2443693 | 40187 | 9151 | -9151 | 100% | $5,033.05 | | -$5,033.05 | -100.00% |
| | Video Game Voters Network | $0.25 | $0.25 | 2194027 | 0 | 0 | 1556500 | 106060 | 1560530 | 67535 | 38425 | -38425 | 100% | $9,606.25 | | -$9,606.25 | -100.00% |
| React2Media Total | | | 14117369 | 0 | 0 | 10514932 | 364070 | 10259412 | 233914 | 130166 | -130166 | 100.00% | $37,922.57 | $0.00 | -$37,922.57 | -100.00% |
| Rex Direct | Academic Finders LT | $0.45 | | 0 | 0 | 0 | 0 | 45278 | 0 | 1001 | 1001 | -1001 | 100% | $450.45 | | -$450.45 | -100.00% |
| | Cruises 4 Free | $0.30 | | 3302518 | 0 | 0 | 2498016 | 72577 | 2425439 | 41552 | 30860 | -30860 | 100% | $9,294.00 | | -$9,294.00 | -100.00% |
| | Degree Counseling formerly GYD | $0.15 | | 0 | 0 | 0 | 0 | 165321 | 0 | 34917 | 34917 | -34917 | 100% | $5,237.55 | | -$5,237.55 | -100.00% |
| | Diabetes Care Club | $5.00 | | 48845 | 0 | 0 | 17478 | 3128 | 14350 | 1049 | 2079 | -2079 | 100% | $10,395.00 | | -$10,395.00 | -100.00% |
| | National Education Online LT | $0.34 | | 0 | 0 | 0 | 0 | 198516 | 0 | 60955 | 60965 | -60965 | 100% | $20,694.10 | | -$20,694.10 | -100.00% |
| Rex Direct Total | | | 3351363 | 0 | 0 | 2515494 | 75708 | 2510504 | 42648 | 128942 | -128942 | 100.00% | $46,071.10 | $0.00 | -$46,071.10 | -100.00% |
| Start Sampling | Nicoderm Auto Responder | $0.00 | $0.00 | 2242640 | 0 | 0 | 1698555 | 522153 | 1176402 | 109448 | 412705 | -412705 | 100% | $0.00 | | $0.00 | 0.00% |
| Start Sampling Responder Total | | | 2242640 | 0 | 0 | 1698555 | 522153 | 1176402 | 109448 | 412705 | -412705 | 100.00% | $0.00 | $0.00 | $0.00 | 0.00% |
| Tanventure Media | Kitchen Magic | $4.00 | $4.00 | 3104 | 0 | 0 | 410 | 161 | 249 | 32 | 129 | -129 | 100% | $516.00 | | -$516.00 | -100.00% |
| Tanventure Media Total | | | 3104 | 0 | 0 | 410 | 161 | 249 | 32 | 129 | -129 | 100.00% | $516.00 | $0.00 | -$516.00 | -100.00% |
| Tiburon | Beliefnet Newsletter | $0.23 | | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0.00% |
| | Cheap Trips | $0.31 | | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0.00% |
| | Lifescript Newsletter | $0.23 | | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0.00% |
| Tiburon Total | | | 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% | $0.00 | $0.00 | $0.00 | 0.00% |
| Unite Network | Claim Your New Card | $2.00 | $2.00 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 100% | $0.00 | | $0.00 | 0.00% |
| | Pre-Paid Master Card | $0.25 | | 163934 | 0 | 0 | 26613 | 26571 | 42 | 10453 | 16118 | -16118 | 100% | $4,023.25 | | -$4,023.25 | -100.00% |
| Unite Network Total | | | 163942 | 0 | 0 | 26613 | 26571 | 42 | 10453 | 16118 | -16118 | 100.00% | $4,023.25 | $0.00 | -$4,023.25 | -100.00% |
| Value Click | ConsumerRewards 500 visa Gift ca | $0.50 | | 729944 | 77604 | 0 | 0 | 0 | 0 | 0 | 0 | -77604 | 100% | $38,802.00 | | -$38,802.00 | -100.00% |
| | CreditReport.com | $36.00 | | 2279073 | 56522 | 3391 | 0 | 0 | 0 | 0 | 0 | -3991 | 100% | $143,676.00 | | -$143,676.00 | -100.00% |
| | CreditReport.com - Debit Path | $28.50 | | 2 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | -1 | 100% | $0.00 | | $0.00 | 0.00% |
| | Crohns | $14.00 | $14.00 | 15286 | 0 | 0 | 4760 | 1959 | 2801 | 544 | 1415 | -1415 | 100% | $19,810.00 | | -$19,810.00 | -100.00% |
| | Discover Clear Card | $0.45 | | 5417669 | 91577 | 0 | 0 | 0 | 0 | 0 | 0 | -9187 | 100% | $4,134.15 | | -$4,134.15 | -100.00% |
| | Disney Movies 2 | $33.75 | | 8006855 | 61784 | 4782 | 0 | 0 | 0 | 0 | 0 | -4782 | 100% | $162,078.50 | | -$162,078.50 | -100.00% |
| | Dr. Diabetic | $4.04 | | 48845 | 0 | 0 | 17478 | 3594 | 13784 | 643 | 3051 | -3051 | 100% | $12,326.04 | | -$12,326.04 | -100.00% |
| | eMusic | $9.00 | | 966246 | 35625 | 2769 | 0 | 0 | 0 | 0 | 0 | -2769 | 100% | $36,431.00 | | -$38,431.00 | -100.00% |
| | FoodCritic101.com | $0.45 | | 15303 | 15203 | 0 | 0 | 0 | 0 | 0 | 0 | -15203 | 100% | $6,841.35 | | -$6,841.35 | -100.00% |
| | FREE Laptop - EXIT | $0.45 | | 730425 | 157514 | 0 | 0 | 0 | 0 | 0 | 0 | -157514 | 100% | $70,881.30 | | -$70,881.30 | -100.00% |
| | Get Health Reform | $1.00 | | 13 | 0 | 0 | 2 | 2 | 0 | 2 | 0 | 0 | 100% | $0.00 | | $0.00 | 0.00% |
| | JC PENNY - EXIT | $0.45 | | 730311 | 517720 | 0 | 0 | 0 | 0 | 0 | 0 | -51772 | 100% | $23,297.40 | | -$23,297.40 | -100.00% |
| | Liberty Medical | $4.50 | | 189747 | 0 | 0 | 67620 | 10785 | 56832 | 8526 | 2259 | -2259 | 100% | $10,165.50 | | -$10,165.50 | -100.00% |
| | My Points | $0.01 | | 76791 | 0 | 0 | 57933 | 3939 | 53994 | 2939 | 0 | 0 | 0% | $0.00 | | $0.00 | 0.00% |
| | Philip Morris 2 | $0.50 | | 735280 | 0 | 0 | 594615 | 267434 | 127181 | 85760 | 181674 | -181674 | 100% | $109,004.40 | | -$109,004.40 | -100.00% |
| | PlasmaTV4Free - EXIT | $0.50 | | 730285 | 93131 | 0 | 0 | 0 | 0 | 0 | 0 | -93131 | 100% | $46,565.50 | | -$46,565.50 | -100.00% |
| | Pleasure Survey | $1.75 | | 184138 | 0 | 0 | 67593 | 5166 | 62527 | 2230 | 2936 | -2936 | 100% | $5,138.00 | | -$5,138.00 | -100.00% |
| | Texas Tourism | $0.35 | $0.50 | 2408591 | 0 | 0 | 1519612 | 36092 | 1783720 | 25562 | 10500 | -10500 | 100% | $3,675.00 | | -$3,675.00 | -100.00% |
| | United Health Quote | $0.35 | | 477026 | 0 | 0 | 25175 | 23071 | 2104 | 1383 | 21703 | -21703 | 100% | $16,868.88 | | -$16,868.88 | -100.00% |
| | Video Professor | $110.00 | | 7478712 | 117772 | 3923 | 0 | 0 | 0 | 0 | 0 | -3923 | 100% | $387,133.60 | | -$387,133.60 | -100.00% |
| | Visa Card | $0.45 | | 730191 | 264135 | 0 | 0 | 0 | 0 | 0 | 0 | -264135 | 100% | $118,860.75 | | -$118,860.75 | -100.00% |
| Value Click Total | | | 27678859 | 640250 | 14855 | 2485088 | 362145 | 2102943 | 128600 | 233543 | -907553 | 100.00% | $1,216,488.77 | $0.00 | -$1,216,488.77 | -100.00% |
| Vinyl Interactive | Degree Counseling formerly GYD | $0.23 | | 0 | 0 | 0 | 0 | 293197 | 0 | 105037 | 0 | 0 | 100% | $30,460.73 | | -$30,460.73 | 0.00% |
| | EDU Demo | $3.00 | | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0% | $0.00 | | $0.00 | 0.00% |
| | Scholarship Zone - Display | $4.50 | | 26007 | 26783 | 1864 | 0 | 0 | 0 | 0 | 0 | -1864 | 100% | $8,388.00 | | -$8,388.00 | -100.00% |
| | Scholarships 4 Moms | $3.48 | | 3006054 | 0 | 0 | 2271608 | 22704 | 2248992 | 15642 | 7082 | -7082 | 100% | $24,824.00 | | -$24,824.00 | -100.00% |
| Vinyl Interactive Total | | | 3032963 | 26783 | 1864 | 2271608 | 22704 | 2542189 | 15642 | 112099 | -8926 | 7.61% | $41,672.53 | $0.00 | -$41,672.53 | -100.00% |
| Virtel | EDU LT | $0.28 | | 0 | 0 | 0 | 0 | 292264 | 0 | 25110 | 0 | -25110 | 100% | $7,030.97 | | -$7,030.97 | -100.00% |
| | Sleep Disorder | $6.80 | | 48816 | 0 | 0 | 1893 | 632 | 1231 | 258 | 374 | -374 | 100% | $2,543.20 | | -$2,543.20 | -100.00% |
| Virtel Total | | | 48816 | 0 | 0 | 1893 | 632 | 293596 | 258 | 25484 | -25484 | 100.00% | $9,574.07 | $0.00 | -$9,574.17 | -100.00% |
| Ward Media | Degree Street LT | $0.18 | | 2 | 0 | 0 | 0 | 491533 | 0 | 11551 | 0 | -11551 | 100% | $2,790.18 | | -$2,790.18 | -100.00% |
| | Degree Street 2 LT | $0.18 | | 0 | 0 | 0 | 0 | 365914 | 0 | 31004 | 0 | -31004 | 100% | $5,580.72 | | -$5,580.72 | -100.00% |
| Ward Media Total | | | 2 | 0 | 0 | 0 | 787447 | 0 | 46555 | 0 | -46555 | 100.00% | $8,370.90 | $0.00 | -$8,370.90 | -100.00% |
| WebYES | Achieve Card | $0.20 | | 130726 | 0 | 0 | 16992 | 16979 | 13 | 3312 | 13667 | -13667 | 100% | $6,436.60 | | -$6,436.60 | -100.00% |
| WebYES Total | | | 130726 | 0 | 0 | 16992 | 16979 | 13 | 3312 | 13667 | -13667 | 100.00% | $6,436.60 | $0.00 | -$6,436.60 | -100.00% |
| Your Credit Specialists | Credit Repair | $0.00 | | 118671 | 0 | 0 | 26698 | 20215 | 6441 | -59 | 20284 | -20284 | 100% | $0.00 | | $0.00 | 0.00% |
| Your Credit Specialists Total | | | 118671 | 0 | 0 | 26698 | 20215 | 6441 | -59 | 20284 | -20284 | 100.00% | $0.00 | $0.00 | $0.00 | 0.00% |
| Grand Total | | | 291822523 | 3401594 | 141618 | 101292562 | 12540119 | 91986213 | 5251169 | 8388012 | 766213 | -11933910 | 90% | $6,270,971.96 | $1,363,601.52 | -$4,907,138.54 | -78.25% |

March, 2010
Co-registration
Revenue

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Caribbean Cruise | | $0.55 | $0.55 | 0 | 0 | 3435 | | -3435 | 100% | $1,889.25 | | -$1,889.25 | -100% | |
| | Cheapflights.com | | $0.30 | $0.30 | 0 | 0 | 16005 | | -16005 | 100% | $4,801.50 | | -$4,801.50 | -100% | |
| | Clean Coal | 20% | $0.22 | $0.28 | 0 | 0 | 68015 | | -68015 | 100% | $14,963.30 | | -$14,963.30 | -100% | |
| | Dell | 20% | $0.15 | | 0 | 0 | 3901 | | -3901 | 100% | $585.15 | | -$585.15 | -100% | |
| | Gatlinburg - Real family values | 20% | $0.72 | $0.72 | 0 | 0 | 522 | | -522 | 100% | $375.84 | | -$375.84 | -100% | |
| | Gatlinburg Travel-Family Fun | None | $0.44 | $0.55 | 0 | 0 | 5051 | | -5051 | 100% | $2,778.05 | | -$2,778.05 | -100% | |
| | Gatlinburg Travel-Smoky Mountain | None | $0.44 | $0.55 | 0 | 0 | 5043 | | -5043 | 100% | $2,773.65 | | -$2,773.65 | -100% | |
| | Gatlinburg: Smokie Mountain 2 | None | $0.56 | $0.70 | 0 | 0 | 2254 | | -2254 | 100% | $1,262.24 | | -$1,262.24 | -100% | |
| React2Media Total | | | | | 0 | 0 | 111577 | 0 | -111577 | 100.00% | $33,518.39 | $0.00 | -$33,518.39 | -100% | Emailed client for stats 5/6/10 |
| Rex Direct | Cruises 4 Free | | $0.30 | | 0 | 0 | 29924 | | -29924 | 100% | $8,977.20 | | -$8,977.20 | -100% | |
| | Degree Counselor LT | | | $0.15 | | | 37589 | | -37589 | 100% | $5,638.35 | | -$5,638.35 | -100% | |
| | Diabetes Care Club | | $5.00 | | 0 | 0 | 1669 | | -1669 | 100% | $8,345.00 | | -$8,345.00 | -100% | |
| | Kia New Car Leads | None | $4.00 | $5.00 | 0 | 0 | 52 | | -52 | 100% | $208.00 | | -$208.00 | -100% | |
| | National Education Online LT | | | $0.34 | | | 59858 | | -59858 | 100% | $20,351.72 | | -$20,351.72 | -100% | |
| Rex Direct Total | | | | | 0 | 0 | 129092 | 0 | -129092 | 100.00% | $43,520.27 | $0.00 | -$43,520.27 | -100% | Emailed client for stats 5/6/10, FU 5/15 |
| Tanventure Media | Kitchen Magic | 35% | $3.25 | $5.00 | 0 | 0 | 162 | 106 | -56 | 35% | $526.50 | $530.00 | $3.50 | 1% | |
| Tanventure Media Total | | | | | 0 | 0 | 162 | 106 | -56 | 34.57% | $526.50 | $530.00 | $3.50 | 1% | Invoiced 5/3/10 w/approval from Bill |
| Trident Marketing | DirectTV | None | $0.01 | RevSh | 0 | 0 | 310 | | -310 | 100% | $3.10 | | -$3.10 | -100% | |
| Trident Marketing Total | | | | | 0 | 0 | 310 | 0 | -310 | 100.00% | $3.10 | $0.00 | -$3.10 | -100% | Donna was this included in your email blast? |
| Value Click | ConsumerRewards 500 visa Gift card- EX | | $0.50 | | 63256 | 0 | 0 | | -63256 | 100% | $31,628.00 | | -$31,628.00 | -100% | |
| | CreditReport.com | | $36.00 | | 26173 | 1452 | 0 | | -1452 | 100% | $52,272.00 | | -$52,272.00 | -100% | |
| | CreditReport.com - Debt Path | | $29.50 | | 2 | 0 | 0 | | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | Discover Clear Card | | $0.45 | | 10796 | 0 | 0 | | -10796 | 100% | $4,858.20 | | -$4,858.20 | -100% | |
| | Disney Movies | | $36.00 | | 729 | 9 | 0 | | -9 | 100% | $324.00 | | -$324.00 | -100% | |
| | Disney Movies 2 | | $32.75 | | 17475 | 1277 | 0 | | -1277 | 100% | $42,533.25 | | -$42,533.25 | -100% | |
| | Dr. Diabetic | | $2.61 | | 0 | 0 | 2546 | | -2546 | 100% | $8,837.25 | | -$8,837.25 | -100% | |
| | Emusic | | $9.00 | | 18436 | 1322 | 0 | | -1322 | 100% | $11,898.00 | | -$11,898.00 | -100% | |
| | FoodCritic101.com | | $0.45 | | 14720 | 0 | 0 | | -14720 | 100% | $6,624.00 | | -$6,624.00 | -100% | |
| | FREE Laptop - EXIT | | $0.45 | | 121092 | 0 | 0 | | -121092 | 100% | $54,491.40 | | -$54,491.40 | -100% | |
| | Get Health Reform | | $1.00 | | 0 | 0 | 0 | | 0 | 0% | $0.00 | | $0.00 | 0% | |
| | JC PENNY - EXIT | | $0.45 | | 42521 | 0 | 0 | | -42521 | 100% | $19,134.45 | | -$19,134.45 | -100% | |
| | Liberty Medical | | $4.50 | | 0 | 0 | 1225 | | -1225 | 100% | $5,512.50 | | -$5,512.50 | -100% | |
| | Philip Morris 2 | None | $0.55 | $0.70 | 0 | 0 | 225524 | | -225524 | 100% | $128,507.90 | | -$128,507.90 | -100% | |
| | PlasmaTV4Free - EXIT | | $0.50 | | 72727 | 0 | 0 | | -72727 | 100% | $36,363.50 | | -$36,363.50 | -100% | |
| | Pleasure Survey | None | $1.75 | $1.80 | 0 | 0 | 6037 | | -6037 | 100% | $10,564.75 | | -$10,564.75 | -100% | |
| | Texas Tourism | None | $0.35 | $0.45 | 0 | 0 | 2906 | | -2906 | 100% | $1,017.10 | | -$1,017.10 | -100% | |
| | United Health Quote | | $0.86 | $2.05 | 0 | 0 | 8503 | | -8503 | 100% | $7,312.58 | | -$7,312.58 | -100% | |
| | Video Professor | | $100.00 | | 38026 | 1041 | 0 | | -1041 | 100% | $104,358.00 | | -$104,358.00 | -100% | |
| | Visa Card | | $0.45 | | 216710 | 0 | 0 | | -216710 | 100% | $97,519.50 | | -$97,519.50 | -100% | |
| Value Click Total | | | | | 642665 | 5101 | 246741 | 0 | -792864 | 100.00% | $623,756.38 | $0.00 | -$623,756.38 | -100% | Login on 16th pull stats and ask if final |
| Video Professor | Video Professor Online 2 | | $50.00 | | 1017 | 29 | 0 | | -29 | 100% | $1,415.00 | | -$1,415.00 | -100% | |
| | Video Professor Online | | $15.00 | $15.00 | 97 | 3 | 0 | | -3 | 100% | $45.00 | | -$45.00 | -100% | |
| | Video Professor Online 3 | | $50.00 | | 10977 | 205 | 0 | | -205 | 100% | $10,349.90 | | -$10,349.90 | -100% | |
| | Video Professor Online 4 | | $45.50 | | 23253 | 861 | 0 | | -861 | 100% | $42,514.95 | | -$42,514.95 | -100% | |
| | video Professor Online 5 | | $50.00 | | 515 | 16 | 0 | | -16 | 100% | $800.00 | | -$800.00 | -100% | |
| | Video Professor Online 6 | | $45.50 | | 2 | 1 | 0 | | -1 | 100% | $45.50 | | -$45.50 | -100% | |
| | Video Professor Online 7 | | $45.50 | | 1 | 1 | 0 | | -1 | 100% | $45.50 | | -$45.50 | -100% | |
| Video Professor Total | | | | | 35862 | 1116 | 0 | 0 | -1116 | 100.00% | $55,215.85 | $0.00 | -$55,215.85 | -100% | Emailed Steve 5/8 |
| Vinyl Interactive | Degree Counseling (formerly GYD) LT | | $0.25 | $0.29 | | | 107683 | 86251 | -21432 | 20% | $31,228.07 | $38,817.45 | $7,589.38 | 24% | |
| | Scholarships 4 Moms | | $0.40 | | 0 | 0 | 2616 | 2529 | -87 | 3% | $1,046.40 | $1,011.60 | -$34.80 | -3% | |
| Vinyl Interactive Total | | | | | 0 | 0 | 110299 | 88780 | -21519 | 19.51% | $32,274.47 | $39,829.05 | $7,554.58 | 23% | Invoiced 5/7/10 |
| Virtel | EDU LT | 20% | $0.28 | $0.35 | | | 17887 | | -17887 | 100% | $5,008.36 | | -$5,008.36 | -100% | |
| | Sleep Disorder | 15% | $6.80 | $8.50 | 0 | 0 | 1033 | | -1033 | 100% | $7,024.40 | | -$7,024.40 | -100% | |
| Virtel Total | | | | | 0 | 0 | 18920 | 0 | -18920 | 100.00% | $12,032.76 | $0.00 | -$12,032.76 | -100% | Emailed client for stats 5/6/10 |
| Ward Media | Degree Street | | | $0.18 | | | 15001 | | -15001 | 100% | $2,700.18 | | -$2,700.18 | -100% | |
| | Degree Street 2 | | | $0.18 | | | 181010 | | -181010 | 100% | $32,581.80 | | -$32,581.80 | -100% | |
| Ward Media Total | | | | | 0 | 0 | 196011 | 0 | -196011 | 100.00% | $35,281.98 | $0.00 | -$35,281.98 | -100% | Emailed client for stats 5/6/10 |
| Webjuice | Auto Insurance CPC | | $4.00 | $4.00 | 880 | 196 | 0 | | -196 | 100% | $788.00 | | -$788.00 | -100% | |
| Webjuice Total | | | | | 880 | 196 | 0 | 0 | -196 | 100.00% | $788.00 | $0.00 | -$788.00 | -100% | Donna was this included in your email blast? |
| WebYES | Achieve Card | None | $0.80 | $1.00 | 0 | 0 | 15522 | | -15522 | 100% | $12,419.60 | | -$12,419.60 | -100% | |
| | Debt Lead Gen | | $1.00 | | 0 | 0 | 6002 | | -6002 | 100% | $5,999.00 | | -$5,999.00 | -100% | |
| | FTD Flowers | | $17.00 | $17.00 | 3 | 1 | 0 | | -1 | 100% | $17.00 | | -$17.00 | -100% | |
| WebYES Total | | | | | 3 | 1 | 21524 | 0 | -21525 | 100.00% | $18,435.60 | $0.00 | -$18,435.60 | -100% | Login/LT activity too |
| Zing Media | Credit Repair Demo | | $0.30 | | 0 | 0 | 0 | | -1 | 100% | $0.00 | | $0.00 | 0% | |
| Zing Media Total | | | | | 0 | 0 | 0 | 0 | -1 | 0.00% | $0.00 | $0.00 | $0.00 | 0% | Not billable per Bill |
| Grand Total | | | | | 2821648 | 88853 | 6478246 | 1345968 | -8818095 | 87% | $4,551,454.24 | $2,491,518.70 | -$2,059,935.54 | -45.26% | |

↑

April, 2010
co-registration
Revenue

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Pleasure Survey | $1.75 | 1.8 | 465442 | 0 | 0 | 155194 | 19970 | 5012 | 3371 | -1641 | -32.74% | $ 8,771.00 | $ 6,742.00 | $ (2,029.00) | -0.2313305 |
| | | Retirement Planning | $2.44 | 3.05 | 40798 | 0 | 0 | 3195 | 3199 | 2873 | 1036 | -1837 | -63.94% | $ 7,010.12 | $ 3,997.00 | $ (3,643.12) | -0.5198944 |
| | | Texas Tourism | $0.36 | 0.45 | 333052 | 0 | 0 | 246073 | 3504 | 410 | 370 | -40 | -9.76% | $ 143.59 | $ 155.50 | $ 23.00 | 0.16027977 |
| | | United Health Quote | $0.86 | 2.05 | 109958 | 0 | 0 | 10387 | 9967 | 9297 | 6030 | -3267 | -35.14% | $ 7,995.42 | $ 12,361.50 | $ 4,366.08 | 0.5450726 |
| | | Value ClickDiscover Clear Card | $0.45 | | 214107 | 6052 | 0 | 0 | 0 | 26 | 26 | 0.45% | $ 2,727.90 | $ 2,210.00 | $ (517.90) | -0.189853 |
| | | Discover More Card | | | | | | | | 2 | | | | $ 130.00 | | |
| | | Value ClickFREE Laptop | $0.45 | 0.45 | 571597 | 111338 | 0 | 0 | 0 | 103040 | 103040 | 92.55% | $ 50,102.10 | $ 51,520.00 | $ 1,417.90 | 0.0283050 |
| | | Visa Card | $0.45 | 0.45 | 571630 | 217170 | 0 | 0 | 0 | 202499 | 202499 | 93.24% | $ 97,726.50 | $101,249.50 | $ 3,523.00 | 0.0360495 |
| | | Websponsors.comChild Safety ID Kit | $0.19 | 0.24 | 221534 | 0 | 0 | 36074 | 38041 | 9507 | 3789 | -6018 | -61.36% | $ 1,863.33 | $ 871.47 | $ (991.86) | -0.5320051 |
| | | Websponsors.comDisney Movies3 for $199 Each! | $36.00 | 36 | 5810071 | 89676 | 5650 | 0 | 0 | 5713 | 5713 | 101.12% | $ 203,400.00 | $ 205,668.00 | $ 2,268.00 | 0.0111504 |
| 30 | Value Click Total | | $12440067 | 634659 | 2001 | 1148356 | 385053 | 236437 | 682303 | 446348 | 817.55% | $612,354.45 | $627,239.57 | $14,855.11 | 0.0242737 |
| | Video Professor | Used for Targeting (Non billable) | $0.00 | | 0 | 0 | 0 | 4 | 2 | 2 | 2 | -100.00% | $ - | | $ - | #DIV/0! |
| 15 | Video Professor Total | | | 0 | 0 | 4 | 2 | 2 | 2 | 2 | -100.00% | $ - | | $ - | #DIV/0! |
| | Vinyl Interactive | Degree Counseling LT | n/a | $0.29 | 0.45 | 0 | 0 | 0 | 84460 | 67873 | -16587 | -19.64% | $ 24,493.40 | $ 30,542.85 | $ 6,049.45 | 0.2469829 |
| | | Vinyl Interactive - StyleMyHouse | $4.00 | | 7 | 7 | 1 | 0 | 0 | 1 | 1 | 0.00% | $ 4.00 | | $ (4.00) | -1 |
| 30 | Vinyl Interactive Total | | $1129 | | 7 | 1 | 0 | 0 | 84460 | 67873 | -16587 | -19.64% | $24,497.40 | $ 30,542.85 | $6,045.45 | 0.2467795 |
| | Virtel | VirtelSleep Disorder | 15% | $6.80 | 8.5 | 31189 | 0 | 0 | 5653 | 2517 | 1493 | 1269 | -224 | -15.00% | $ 10,152.40 | $ 10,786.50 | $ 634.10 | 0.0624551 |
| 30 | Virtel Total | | $51129 | | 31189 | 0 | 0 | 5653 | 2517 | 1493 | 1269 | -224 | -15.00% | $10,152.40 | $ 10,786.50 | $634.10 | 0.0624551 |
| | Vonage | Vonage LeadGen | $0.20 | 125 | 1519657 | 0 | 0 | 119127 | 83957 | 69896 | -59898 | -100.00% | $ 23,493.30 | | $ (23,493.30) | -1 |
| | | | $0.00 | | 3359 | 0 | 0 | 220 | 171 | 164 | -164 | -100.00% | $ 0.70 | | $ (0.70) | -1 |
| 30 | Vonage Total | | $1523016 | | 0 | 119347 | 84128 | 70060 | -70060 | -200.00% | $ 23,494.00 | | $ (23,494.00) | -1 |
| | W4 | 2 InsuredLess - Life | n/a | $9.00 | 9 | 1 | 1 | 0 | 0 | 0 | 0 | -1 | -100.00% | $ - | | $ - | #DIV/0! |
| | | Bankruptcy.me-Free Bankruptcy Case Evaluatin | $10.50 | 10.5 | 298 | 295 | 6 | 0 | 0 | 7 | 1 | 16.67% | $ 63.00 | $ 73.50 | $ 10.50 | 0.1666667 |
| | | Best Senior Care Online | n/a | $6.50 | 6.5 | 2 | 2 | 0 | 0 | 0 | 1 | -1 | -50.00% | $ 6.50 | | $ 6.50 | #DIV/0! |
| | | Gamevance - Frogger v1 | $2.00 | 2 | 1 | 1 | 0 | 0 | 0 | -1 | -100.00% | $ - | | $ - | #DIV/0! |
| | | Hoveround - Powered Scooter Free DVD Inff | n/a | $26.00 | 26 | 4213 | 4181 | 598 | 0 | 0 | 0 | 415 | 17 | 4.27% | $ 10,348.00 | $ 10,790.00 | $ 442.00 | 0.0427136 |
| | | Jenny Craig | n/a | $13.00 | 13 | 115 | 114 | 2 | 0 | 0 | 0 | 4 | 2 | 100.00% | $ 26.00 | $ 52.00 | $ 26.00 | 1 |
| | | Life Quote Match | n/a | $4.50 | 4.5 | 1 | 1 | 0 | 0 | 0 | 0 | -1 | -100.00% | $ - | | $ - | #DIV/0! |
| | | Mortgage Refinance | n/a | $12.50 | 12.5 | 1 | 1 | 0 | 0 | 0 | 1 | 0 | 0.00% | $ - | $ 12.50 | $ 12.50 | #DIV/0! |
| | | Planning Family | n/a | $1.50 | 1.5 | 112 | 109 | 4 | 0 | 0 | 0 | 5 | 1 | 25.00% | $ 6.00 | $ 7.50 | $ 1.50 | 0.25 |
| | | The Debt Cheetah | n/a | $16.00 | 16 | 2554 | 2544 | 103 | 0 | 0 | 81 | -22 | -21.35% | $ 1,648.00 | $ 1,296.00 | $ (352.00) | -0.2135922 |
| | | Zip Insurance Auto Quote | $4.25 | 4.25 | 7327 | 7238 | 440 | 0 | 0 | 568 | 128 | 29.09% | $ 1,870.00 | $ 2,414.00 | $ 544.00 | 0.2909091 |
| | | Zip Insurance Health Quote | $2.20 | 2.2 | 1870 | 1845 | 125 | 0 | 0 | 165 | 60 | 48.00% | $ 275.00 | $ 407.00 | $ 132.00 | 0.48 |
| 15 | W4 Total | | $16495 | 16332 | 1078 | 0 | 0 | 1247 | 163 | 148.33% | $ 14,235.00 | $ 15,059.00 | $823.00 | 0.0578112 |
| | Ward Media | Degree Street Demo | N/A | $0.00 | 0.2 | 1 | 1 | 0 | 0 | 0 | -1 | -100.00% | $ - | | $ - | #DIV/0! |
| | | Degree Street 2 LT | N/A | | 0.2 | 0 | 0 | 0 | 0 | 350917 | 280912 | -70005 | -19.95% | $ 63,165.06 | $ 56,182.40 | $ (6,982.66) | -0.1105462 |
| 30 | Ward Media Total | | | | 0 | 0 | 350917 | 280912 | -70006 | -100.00% | $ 63,165.56 | $ 56,182.40 | $ (6,932.56) | -0.1105462 |
| | Webjuice | Auto Insurance - April Additional | | | | | | | 211 | | | | $ 422.00 | | |
| | | Auto Insurance CPC | $2.00 | | 39295 | 39025 | 10289 | 0 | 0 | 12067 | 1758 | 17.47% | $ 24,565.00 | $ 24,174.00 | $ 414.00 | -0.0168375 |
| 30 | Webjuice Total | | $39295 | 39025 | 10289 | 0 | 0 | 12067 | 1758 | 17.47% | $ 24,588.00 | $ 24,596.00 | $ (414.00) | -0.0163375 |
| | WebYES | Auto Protection Display | n/a | $6.50 | 6.5 | 1265 | 1281 | 133 | 0 | 0 | 158 | 25 | 18.80% | $ 864.50 | $ 1,027.00 | $ 162.50 | 0.1879699 |
| | | Achieve Card | n/a | $0.80 | 1 | 181804 | 0 | 0 | 16872 | 16854 | 10027 | -10007 | 0.00% | $ 8,005.60 | $ 10,007.00 | $ 2,001.40 | 0.25 |
| | | Achieve Card 3 | 20% | $0.80 | 1 | 188464 | 0 | 0 | 15311 | 15292 | 9994 | 10557 | 573 | 5.73% | $ 7,995.20 | $ 10,567.00 | $ 2,571.80 | 0.3216589 |
| | | FTD Flowers | n/a | $17.00 | 17 | 143998 | 551 | 26 | 0 | 0 | 26 | 0 | 0.00% | $ 442.00 | $ 442.00 | $ - | 0 |
| 15 | WebYES Total | | $515361 | 2132 | 159 | 32153 | 32146 | 20011 | 20759 | -22532% | $17,307.30 | $ 22,043.00 | $ 4,735.70 | 0.2736244 |
| | | MAMy EDU Full Page | $0.65 | 0.65 | 30 | 0 | 0 | 5 | 5 | -5 | -100.00% | $ 3.25 | | $ (3.25) | -1 |
| 15 | Total ModernAdMedia Other | | $0.65 | 0.65 | 30 | 0 | 0 | 5 | 5 | -5 | -100.00% | $ 3.25 | | $ (3.25) | -1 |
| | | | #REF! | #REF! | #REF! | #REF! | #REF! | #REF! | #REF! | -516.11% | $4,577,369.59 | $ 4,668,155.62 | $ (16,211.80) | |

in balance 7/10/10

*May, 2010*
*Co-registration*
*Revenue*

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Emusic | None | $ 9.00 | $ 9.00 | 796,155 | 15,863 | 1,091 | - | - | - | (1,091) | -100% | $ 9,819.00 | | $ (9,819.00) |
| | Food Critic | None | $ 0.45 | 0.45 | 14,635 | 14,488 | - | - | - | - | - | | $ 6,519.60 | | $ (6,519.60) |
| | FREE Laptop | None | $ 0.45 | 0.45 | 594,414 | 105,339 | - | - | - | - | - | | $ 47,402.55 | | $ (47,402.55) |
| | JC PENNY - EXIT | None | $ 0.45 | 0.45 | 594,403 | 42,229 | - | - | - | - | - | | $ 19,003.05 | | $ (19,003.05) |
| | Liberty Medical | None | $ 4.50 | 9.00 | 207,392 | - | - | 46,093 | 4,461 | 1,171 | (1,171) | -100% | $ 5,269.50 | | $ (5,269.50) |
| | Living Lean | None | $ 24.00 | 24.00 | 890,638 | 14,175 | 363 | - | - | - | (363) | -100% | $ 8,712.00 | | $ (8,712.00) |
| | Philip Morris 2 | None | $ 0.55 | 0.70 | 620,834 | - | - | 572,144 | 272,904 | 160,547 | (160,547) | -100% | $ 88,300.85 | | $ (88,300.85) |
| | PlasmaTV4Free - EXIT | None | $ 0.50 | 0.50 | 594,384 | 70,732 | - | - | - | - | - | | $ 35,366.00 | | $ (35,366.00) |
| | Pleasure Survey | None | $ 1.75 | 1.80 | 206,098 | - | - | 56,282 | 4,700 | 947 | (947) | -100% | $ 1,657.25 | | $ (1,657.25) |
| | National Planning | None | $ 2.44 | 3.05 | 43,742 | - | - | 3,245 | 3,240 | 3,002 | (3,002) | -100% | $ 7,324.88 | | $ (7,324.88) |
| | United Health Quote | None | $ 0.86 | 2.05 | 24,948 | - | - | 2,202 | 2,113 | 1,892 | (1,892) | -100% | $ 1,627.12 | | $ (1,627.12) |
| | Visa Cam | None | $ 0.45 | 0.45 | 594,141 | 208,623 | - | - | - | - | - | | $ 93,820.35 | | $ (93,820.35) |
| ValueClick Total | | | | | 17,908,233 | 825,443 | 6,748 | 889,986 | 287,448 | 167,559 | (174,277) | -101% | $ 547,772.95 | | $ (647,721) |
| ValueClick/Websponsors | Child Safety ID Kit | None | $ 0.19 | 0.24 | 210,727 | - | 1 | 29,658 | 28,622 | 2,528 | (2,529) | -100% | $ 450.32 | | $ (480.32) |
| | Home Depot Improver | (blank) | $ 3.00 | 3.00 | | 1 | 1 | - | - | - | (1) | -100% | $ 3.00 | | $ (3.00) |
| ValueClick/Websponsors.com: Child Safety ID Kit Total | | | | | 210,728 | 1 | | 28,658 | 28,622 | 2,529 | (2,529) | -101% | $ 483.32 | | $ (483) |
| Vinyl Interactive | Degree Counseling LT | | | 0.29 | | | | | | 68,752 | (68,752) | -100% | $ 19,938.08 | | $ (19,938.08) |
| | StyleMyHouse | None | $ 4.00 | 4.00 | 316 | 316 | 15 | - | - | - | (15) | -100% | $ 60.00 | | $ (60.00) |
| Vinyl Interactive Total | | | | | 316 | 316 | 15 | | | 68,752 | (68,767) | -100% | $ 19,998.08 | | $ (19,998) |
| Virtel | Sleep Disorder | 15% | $ 6.80 | 8.50 | 6,261 | - | | 1,886 | 1,207 | 696 | (695) | -100% | $ 4,726.00 | | $ (4,726.00) |
| Virtel Total | | | | | 6,261 | | | 1,886 | 1,207 | 696 | (695) | | $ 4,726.00 | | $ (4,726) |
| Ward Media | Degree Street EDU LT | | | 0.18 | 1 | | | | 15,000 | 12,010 | (2,990) | -20% | $ 2,700.00 | $ 2,402.00 | $ (298.00) |
| | Degree Street2 EDU LT | | | 0.18 | 1 | | | | 285,494 | 229,571 | (55,923) | -20% | $ 51,386.92 | $ 45,914.20 | $ (5,474.72) |
| Ward Media Total | | | | | 2 | | | | 300,494 | 241,581 | (58,912) | -20% | $ 54,086.92 | $ 48,316.20 | $ (5,773) |
| W4 | ADT - Display | None | $ 25.00 | 25.00 | 3 | 4 | 1 | - | - | - | (1) | -100% | $ 25.00 | | $ (25.00) |
| | American Laser Centers | None | $ 7.50 | 7.50 | 4 | 5 | 1 | - | - | - | (1) | -100% | $ 7.50 | | $ (7.50) |
| | Cobra Health Insurance | None | $ 7.50 | 7.50 | 15 | 11 | 2 | - | - | - | (2) | -100% | $ 15.00 | | $ (15.00) |
| | Course Advisor - Grant Guide Display | None | $ 28.00 | 28.00 | 6,284 | 870 | 104 | - | - | - | (104) | -100% | $ 2,912.00 | | $ (2,912.00) |
| | Course Advisor - Scholarships Display | None | $ 28.00 | 28.00 | 6,456 | 744 | 80 | - | - | - | (80) | -100% | $ 2,240.00 | | $ (2,240.00) |
| | Dish Network - First Page Submit | None | $ 17.00 | 17.00 | 11 | 5 | 1 | - | - | - | (1) | -100% | $ 17.00 | | $ (17.00) |
| | Hoveround - Powered Scooter Free | None | $ 26.00 | 26.00 | 1,716 | 1,706 | 162 | - | - | - | (162) | -100% | $ 4,212.00 | | $ (4,212.00) |
| | Jenny Craig | None | $ 13.00 | 13.00 | 8 | 4 | 1 | - | - | - | (1) | -100% | $ 13.00 | | $ (13.00) |
| | Loan Modification - Short Form | None | $ 16.00 | 16.00 | 121 | 19 | 1 | - | - | - | (1) | -100% | $ 16.00 | | $ (16.00) |
| W4 Total | | | | | 14,618 | 3,368 | 353 | | | | (353) | -100% | $ 9,457.50 | | $ (9,458) |
| Webslice | Auto Insurance CPC | None | $ 2.00 | 4.00 | 95,976 | 95,438 | 22,247 | - | - | - | (22,247) | -100% | $ 44,494.00 | | $ (44,494.00) |
| Webslice Total | | | | | 95,976 | 95,438 | 22,247 | | | | (22,247) | -100% | $ 44,494.00 | | $ (44,494) |
| WebYES | Achieve Card | None | $ 0.90 | 1.00 | 88,017 | - | - | 6,436 | 6,434 | 3,685 | (3,685) | -100% | $ 2,946.00 | | $ (2,946.00) |
| | National Cash Match | None | $ 15.00 | 15.00 | | 4 | 3 | 1 | - | - | - | (1) | -100% | $ 15.00 | | $ (15.00) |
| WebYES Total | | | | | 88,021 | 3 | 1 | 6,436 | 6,434 | 3,685 | (3,686) | | $ 2,961.00 | | $ (2,963) |
| Grand Total | | | | | ######### | 3,189,922 | 111,685 | 100,830,458 | 11,932,682 | 7,710,903 | 945,686 | -6979522 | #DIV/0! | $ 5,084,091.09 | $ 2,133,839.99 | $ (2,950,720.10) |

In balance 7/9/10

June 2010
Co-registration
Revenue

| | |
|---|---|
| **DISTRICT COURT, COUNTY OF EL PASO, COLORADO**<br>P. O. Box 2980<br>Colorado Springs, CO 80901-2980<br>Phone: (719) 448-7700 | EFILED Document<br>CO El Paso County District Court 4th JD<br>Filing Date: Feb 24 2012 12:11PM MST<br>Filing ID: 42699139<br>Review Clerk: Rachael Maestas |
| **Willem Adams,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ModernAd Media, LLC, a Florida Limited Liability Company; 7657030 CANADA INC., a Canadian Corporation d/b/a Acquinity Interactive; Warren Rustin; and Garry Jonas,**<br><br>**Defendants.** | Case Number:<br>2012 CV 831<br><br>Division: |
| Ian D. Kalmanowitz, #32379<br>CORNISH & DELL'OLIO, P.C.<br>431 N. Cascade Avenue<br>Colorado Springs, CO 80903<br>Phone: (719) 475-1204<br>Fax: (719) 475-1264 | |
| **AFFIDAVIT OF IAN D. KALMANOWITZ, ESQ.** | |

I, Ian D. Kalmanowitz, Esq. being duly sworn, state as follows:

1. I am the attorney for Plaintiff Willem Adams in the above-captioned matter.

2. Based on the following facts, venue of this action is proper in El Paso County District Court: (a) Plaintiff Willem Adams is a resident of Colorado Springs, CO; (b) Defendant ModernAd Media is Florida limited liability company authorized by the Colorado Secretary of State to do business in the state of Colorado; (c) ModernAd Media maintained an office in Colorado Springs, and staffed that office with local employees; (d) Plaintiff worked out of ModernAd Media's Colorado Springs office for the duration of his employment with ModernAd Media; and (e) a substantial portion of the events giving rise to this lawsuit occurred in Colorado Springs, CO.

3.      Based upon reasonable inquiry, I declare that Defendant ModernAd Media is not a minor, an incapacitated person, an officer or agency of the State of Colorado, or in the military service.  This declaration is based on the fact that ModernAd Media is a foreign limited liability company, and not a natural person.

I declare under penalty of perjury under the laws of the State of Colorado and the United States of America that the foregoing is true and correct.

Executed on this 24th day of February, 2012.

s/Ian D. Kalmanowitz
Ian D. Kalmanowitz, # 32379
Cornish & Dell'Olio, P.C.
431 North Cascade Ave.
Colorado Springs, Colorado
Tel. (719) 475 1204
Fax (719) 475 1264
ikalmanowitz@cornishanddellolio.com
Attorneys for the Plaintiff

*In accordance with C.R.C.P. 121 §1-26(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

2