IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 12-cv-00513-PAB-MEH

WILLEM ADAMS,

      Plaintiff,

v.

MODERNAD MEDIA, LLC, a Florida limited liability company,
7657030 CANADA, INC., a Canadian corporation d/b/a Acquinity Interactive,
WARREN RUSTIN, and
GARRY JONAS,

      Defendants.

---

**ORDER**

---

      This matter is before the Court on the Motion to Stay Litigation and Compel Arbitration [Docket No. 15] filed by defendants ModernAd Media, LLC ("ModernAd") and Warren Rustin, the Motion to Transfer [Docket No. 22] and the Motion to Dismiss [Docket No. 39] filed by defendants 7657030 Canada, Inc. ("Acquinity") and Garry Jonas.  The motions are fully briefed and ripe for disposition.

## I.  BACKGROUND

      ModernAd is an internet marketing company located in Florida that provides, among other things, display advertising, call center solutions, and affiliate marketing.  Docket No. 25 at 3, ¶ 10.  In December 2008, Warren Rustin, president of ModernAd, approached plaintiff, Willem Adams, to discuss an employment opportunity in ModernAd's marketing department.  *Id*. at 4, ¶ 19.  After negotiations, on December 30, 2008, Mr. Adams entered into an employment agreement with ModernAd.  *See* Docket

No. 15-1.  The employment agreement includes an arbitration clause which provides, in pertinent part, that:

> Except as otherwise provided herein, all controversies, disputes and matters in question arising out of or related to this Agreement or the breach of this Agreement or the relations between the signatories to this Agreement, (including but not limited to any dispute regarding a determination of "Cause" by the Company pursuant to the provisions of Section 10(d) below) which cannot be resolved by good faith negotiation between the parties, the dispute [sic] shall be decided by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.  The arbitration shall take place exclusively in Palm Beach County, Florida and shall be governed by the substance of Law of the State of Florida.

Docket No. 15-1 at 12, ¶ 9(d).  The employment agreement also contains a clause which states that "[a]ny Affiliate of the Company shall have the same rights as the Company under this Agreement, and Employee's obligations to the Company under this Agreement shall be owed to such Affiliate(s) in the same manner as they are owed to the Company."  *Id*. at 17, ¶ 15.  Additionally, the employment agreement includes a provision requiring ModernAd to supply Mr. Adams with a severance payment in the event ModernAd terminates Mr. Adams' employment without cause.  *Id. at* 15, ¶ 11(b). Pursuant to the agreement, Mr. Adams would work for ModernAd for a period of three years starting on January 1, 2009 and ending on January 1, 2012.  Docket No. 25 at 5, ¶ 24.  Mr. Adams began working for ModernAd shortly after signing the employment agreement.  *Id*. at ¶ 25.

In December 2010, Mr. Rustin announced that ModernAd had sold the majority of its assets to several former ModernAd executives including Chief Executive Officer Garry Jonas, Greg Van Horn, and Josh Greenberg.  *Id*. at 6-7, ¶ 34.  Mr. Jonas, Mr. Van Horn, and Mr. Greenberg had formed an internet marketing company called

Acquinity, which provides services such as email, mobile web, and social media marketing. *Id*. at 3, ¶ 12. As a result of the sale of ModernAd's assets, ModernAd terminated Mr. Adams' employment. *Id*. at 10, ¶ 57. Mr. Adams alleges that, according to the terms of the employment agreement, he was not terminated for "cause." *Id*. at ¶ 59. Mr. Adams avers that he performed all of his duties under the terms of the employment agreement and that, because his termination was not for "cause," he is entitled to $240,000 in severance payments that ModernAd refuses to provide. *Id*. at 11, ¶ 61-65.

After ModernAd terminated his employment, Mr. Adams began working for Acquinity as its vice president of sales. *Id*. at 12, ¶ 67. Mr. Adams states that his duties at Acquinity were similar to those he performed for ModernAd, that Acquinity agreed to pay him $20,000 per month plus expenses, and that he worked for Acquinity from an office located in Colorado Springs, Colorado. *Id*. at 12, ¶ 68-72. Mr. Adams alleges that he worked for Acquinity from January 4, 2011 until October 31, 2011, when Acquinity terminated his employment. *Id*. at 12-13, ¶ 74. Mr. Adams states that, before the termination of his employment with Acquinity, he entered into an oral agreement with Mr. Jonas, Acquinity's owner and director, wherein Mr. Adams would continue to work for Acquinity as a consultant until the end of December 2011 and would be compensated at the same rate. *Id*. at 13, ¶ 77.

Mr. Adams asserts that, from November 1, 2011 until early December 2011, he performed his duties as a consultant for Acquinity, *id*. at 13-14, ¶ 78-82, and that, in reliance on the agreement with Mr. Jonas, he did not seek other forms of employment

and ignored other potential business ventures.  *Id*. at ¶ 87.  Mr. Adams alleges that he

is entitled to $27,692.31 for the work he performed on behalf of Acquinity as a

consultant, *id*. at 14-15, ¶ 88-90, and that Acquinity conditioned payment of the

$27,692.31 upon his agreement to release all legal claims against Acquinity and other

terms he found objectionable.  *Id*. at 15, ¶ 89.  Mr. Adams states that, once he refused

to sign the termination agreement, Acquinity refused to pay the $27,692.31 as

compensation for his work.  *Id*. at 16, ¶ 96.

On January 19, 2012, Mr. Adams filed this case in the District Court for the

County of El Paso, Colorado.  Docket No. 5.  In his amended complaint, Mr. Adams

brings claims for breach of contract and fraudulent misrepresentation against

defendants ModernAd and Mr. Rustin.  Docket No. 25 at 19-20.  Mr. Adams also brings

a claim for breach of contract against Mr. Jonas and Acquinity as well as a promissory

estoppel claim against Acquinity only.  *Id*. at 20-21.  Finally, Mr. Adams brings a claim

for intentional interference with an employment contract against Mr. Jonas.  *Id*. at 22.

On February 28, 2012, pursuant to 28 U.S.C. § 1332, defendants removed the case to

this Court.  Docket No. 1.

On March 6, 2012, defendants ModernAd and Mr. Rustin filed a motion to

compel arbitration of Mr. Adams' first and second claims, arguing that these claims are

covered by the employment agreement's arbitration clause.  *See* Docket No. 15.  On

March 20, 2012, defendants Acquinity and Mr. Jonas filed a motion to transfer Mr.

Adams' third, fourth, and fifth claims to the Southern District of Florida or, in the event

that the Court compels arbitration, to stay the entire case pending arbitration.  *See*

Docket No. 22.  On May 14, 2012, Acquinity and Mr. Jonas filed a motion to dismiss Mr.

Adams' third and fifth claims only as to Mr. Jonas.  Docket No. 39.

## II.  ANALYSIS

### A.   Motion To Compel Arbitration

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, agreements to

arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court

has "long recognized and enforced a liberal federal policy favoring arbitration

agreements," and under this policy, doubts concerning the scope of arbitrable issues

are resolved in favor of arbitration.  *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362

F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537

U.S. 79. 83 (2002)).  The FAA mandates a stay of a judicial proceeding where the

parties have executed a written arbitration agreement covering the dispute.  9 U.S.C.

§ 3.

The decision whether to enforce an arbitration agreement requires a two-step

inquiry: first, the Court must determine whether a valid agreement to arbitrate exists;

and, second, the Court must determine whether the specific dispute falls within the

scope of that agreement.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473

U.S. 614, 626 (1985); *see also Pikes Peak Nephrology Assocs., P.C. v. Total Renal

Care, Inc.*, No. 09-cv-00928-CMA-MEH, 2010 WL 1348326, at *5 (D. Colo. Mar. 30,

2010) (citation omitted).

The Court will first determine whether a valid agreement to arbitrate exists. "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). Defendants ModernAd and Mr. Rustin, as the parties claiming an obligation to arbitrate, have the burden of establishing that Mr. Adams' claims are subject to arbitration. *See McCarthy v. Azure*, 22 F.3d 351, 354-55 (1st Cir. 1994). If ModernAd and Mr. Rustin meet their burden, the burden shifts to Mr. Adams to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005).

Generally, state law principles of contract formation govern whether a valid arbitration agreement exists. *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). ModernAd and Mr. Rustin argue that this case is governed by Florida law because of the employment agreement's choice of law provision.[1] *See* Docket No. 15-1 at 18, ¶ 18(c) ("This Agreement and all other disputes between the parties hereto, if any, shall be governed and construed in accordance with the statutory and decisional law of the State of Florida"). The Court agrees and therefore will apply

---

[1]Under Colorado choice of law rules, a court applies the law of the state that the contracting parties chose to govern their contractual rights and duties unless: (1) the state chosen has no substantial relationship to parties or transaction and there is no other reasonable basis for parties' choice; or (2) application of the law of the state chosen would be contrary to fundamental policy of the state whose law would otherwise govern. *Hansen v. Gab Business Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994). Here, there is a reasonable basis for selecting Florida because ModernAd is located there. Moreover, neither party has argued that Florida law is contrary to a fundamental Colorado policy.

6

Florida law to all substantive matters.  *See First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 944 (1995) (noting that, whether parties have agreed to arbitration, and the

scope of that agreement, is generally determined under contract principles).

In this case, neither side to the dispute challenges the validity of the arbitration

clause in the employment agreement.  Hence, the Court finds that the employment

agreement creates a valid duty to arbitrate.

The next issue that the Court must determine is whether Mr. Adams' claims of a

breach of contract and fraudulent misrepresentation fall within the scope of the

arbitration clause.  The employment agreement mandates arbitration for "all

controversies, disputes and matters in question arising out of or related to this

Agreement or the breach of this Agreement or the relations between the signatories of

this Agreement."  Docket No. 15-1 at 12, ¶ 9(d).  In analyzing the scope of an arbitration

clause, the Court should classify the particular clause as broad or narrow.  *Cummings v.

FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005).  Given that

the clause here covers not only those issues arising out of the employment agreement,

but those issues related to the relationship of the parties, the Court finds that the

employment agreement provides for a broad arbitration clause.  *See Brown v. Coleman

Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (noting the arbitration clause which covered

"all disputes or controversies arising under or in connection with this Agreement" was

broad).  Where the arbitration clause is broad, there arises a presumption of

arbitrability, and a court will order arbitration of even a collateral matter if the claim

alleged implicates issues of contract construction or the parties' rights and obligations

under it.  *Cummings*, 404 F.3d at 1261.  Given the broad scope of the arbitration

clause, the Court finds that Mr. Adams' claims for breach of contract and fraudulent

misrepresentation are subject to arbitration.  *See id.*

Mr. Adams opposes arbitration on the grounds that defendants are not entitled to

enforce the arbitration clause because they failed to abide by a condition precedent in

the employment agreement, namely, that defendants have not participated in "good

faith negotiation[s]" to resolve the parties' dispute.  Docket No. 15-1 at 12, ¶ 9(d).  In

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), the Supreme Court

distinguished between "questions of arbitrability" and "procedural questions which grow

out of [a] dispute and bear on its final disposition."  *Id*. at 84.  The Supreme Court held

that, "in the absence of an agreement to the contrary . . . issues of procedural

arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and

other conditions precedent to an obligation to arbitrate have been met, are for the

arbitrators to decide."  *Id*. at 85 (quoting the Revised Uniform Arbitration Act of 2000

(RUAA) § 6(c) cmt. 2); *see also Lenox-Maclaren Surgical Corp. v. Medtronic Sofamor*

*Danek USA, Inc.*, No. 07-cv-02054-MSK-KMT, 2008 WL 3851936, at *7 (D. Colo. Aug.

13, 2008) (finding that "conditions precedent to arbitration are not part of the factual

basis underlying the claim for relief, and, therefore, a procedural objection to arbitrability

must be decided by the arbitrator").  Moreover, under the Rules of the American

Arbitration Association, which is referenced in the arbitration clause here, arbitrators

typically decide questions which concern the scope of their own jurisdiction, including

"whether conditions precedent to arbitrability have been fulfilled."  *Fantastic Sams*

*Franchise Corp. v. FSRO Assoc., Ltd.*, 683 F.3d 18, 25 (1st Cir. 2012). In addition, because, under Florida law, conditions precedent are affirmative defenses which do not apply to contract formation, the enforceability, or applicability of an arbitration clause, this is an issue properly decided by the arbitrator and not the Court. *See Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 996-97 (11th Cir. 2012) (finding that, under Florida law, the issue of whether certain conditions precedent were unfulfilled is one that is properly decided by an arbitrator rather than the district court). Based on the foregoing, the Court finds that defendants' alleged failure to negotiate in good faith is not a substantive arbitrability issue for the Court to decide, but a procedural one for the arbitrator. Finally, the Court concludes that the employment agreement constitutes a valid and enforceable agreement to arbitrate to which Mr. Adams and ModernAd are bound.

Defendants have not only requested that the Court compel Mr. Adams to arbitrate his first and second claims for relief against ModernAd, but also request that he be compelled to arbitrate those claims against Mr. Rustin as well, even though Mr. Rustin is not a signatory to the employment agreement. *See* Docket No. 15 at 11-12. Mr. Adams does not oppose this request and states that, should the Court compel arbitration, he "agrees that the claims against Rustin are subject to arbitration." Docket No. 24 at 1 n.1.

Courts usually have the authority to compel arbitration only between the signatories of an arbitration agreement. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001).

However, courts have compelled signatories to arbitrate with non-signatories in certain circumstances.  *See Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.*, 176 F. Supp. 2d 1091, 1097-98 (D. Colo. 2001) (noting that courts have bound a signatory to arbitrate with a non-signatory based on a close relationship between them and the fact that the claims were intertwined with the underlying contract obligations); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011) (noting that courts have applied estoppel principles to require signatories to arbitrate with a non-signatory).

The Court finds that the close relationship between the claims brought against ModernAd and Mr. Rustin allows these defendants to compel Mr. Adams, a signatory, to arbitrate his fraudulent misrepresentation and breach of contract claims against Mr. Rustin, a non-signatory.  *See Cherry Creek Card*, 176 F. Supp. 2d at 1098.  Moreover, the Court finds that arbitration of claims against Mr. Rustin is appropriate because Mr. Rustin arguably falls within the employment agreement's affiliate clause.  *See* Docket No. 15-1 at 17, ¶ 15.  Accordingly, the Court will compel Mr. Adams to arbitrate his claims against defendants ModernAd and Mr. Rustin.  *See* 9 U.S.C. § 4.

## B.   Motion to Transfer or, in the Alternative, Stay Non-Arbitrable Claims

In the motion to transfer [Docket No. 22], defendants Acquinity and Mr. Jonas request that (1) pursuant to 28 U.S.C. § 1404, the Court transfer Mr. Adams' third, fourth, and fifth claims to the Southern District of Florida or (2) the Court stay Mr. Adams' third, fourth, and fifth claims should the Court compel arbitration.  Docket No. 22 at 2-4.  The Court addresses these arguments in turn.

### 1.  Transfer of Claims Three, Four, and Five

Acquinity and Mr. Jonas request that the Court transfer Mr. Adams' third, fourth, and fifth claims for relief to the Southern District of Florida.  In support, defendants argue that transfer is proper because (1) all witnesses relevant to this case – other than plaintiff – reside in Florida and are unwilling to travel to Colorado; (2) Acquinity and Mr. Jonas are residents of Florida; (3) all the relevant documents to this action are located in Florida, and (4) the enforceability of the judgment and all other practical trial considerations weigh in favor of transfer.  Docket No. 22 at 5-11.  Mr. Adams opposes transfer.  *See* Docket No. 26 at 6-14.

Title 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Section 1404 "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *accord Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167-68 (10th Cir. 2010).  The party seeking transfer bears the burden of establishing the inconvenience of the existing forum and, unless the balance of inconvenience is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed.  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).[2]

---

[2]The non-exclusive factors relevant to a § 1404(a) transfer analysis include:

Pursuant to § 1404(a), the Court may only transfer "an entire action, not individual claims." *Chrysler Credit Corp.*, 928 F.2d at 1518; *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) ("We agree that [28 U.S.C. § 1404] authorizes the transfer only of an entire action and not of individual claims"); *see In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516-17 (8th Cir. 1985); *Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1188 (D. Kan. 2008).  Because these defendants have not requested that the Court sever claims three, four, and five or transfer the entire case to the Southern District of Florida, the Court will deny defendants' motion to transfer.[3]

### 2.   Stay of Non-Arbitrable Claims

In the alternative, Acquinity and Mr. Jonas request that the Court stay Mr. Adams' third, fourth, and fifth claims pending arbitration.  Docket No. 22 at 3-4.  In his third claim for relief, Mr. Adams alleges that Acquinity and Mr. Jonas breached the oral

---

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)

[3]ModernAd and Mr. Rustin did not request a transfer of the entire case to the Southern District of Florida, but rather requested a stay in this Court and a transfer of the question of arbitrability to the Southern District of Florida.  *See* Docket No. 15 at 1 (requesting that the Court "stay[ ] this litigation and transfer[ ] the claims against [ModernAd and Mr. Rustin] to the Southern District of Florida so that the Defendants may move to compel arbitration in that court.").

contract between the parties and failed to provide Mr. Adams with compensation for his work as a consultant for Acquinity between November 2011 and early December 2011. Docket No. 25 at 20-21, ¶¶ 126-131. In his fourth claim for relief, Mr. Adams brings a claim for promissory estoppel against Acquinity, asserting that he relinquished other work opportunities in reliance on Acquinity's promise to compensate him for work performed between November 2011 and December 2011. *Id*. at 21-22, ¶¶ 135-139. In his fifth claim for relief, Mr. Adams asserts a claim against Mr. Jonas for intentional interference with an employment contract. *Id*. at 22-23.

In *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998), the Tenth Circuit discussed the appropriate standard to determine whether district courts should stay cases that involve claims not subject to arbitration while the arbitrable claims are determined by an arbitrator. *Id*. at 785. The court determined that district courts should analyze whether the "arbitrable claims will have a preclusive effect on the nonarbitrable claims . . . [and] predominate over the nonarbitrable claims." *Id*. However, the court cautioned that "the mere fact that piecemeal litigation results from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [plaintiff's] entire case." *Id*.

The Court finds that the result of the arbitration proceedings could have a preclusive effect on the majority of Mr. Adams' fifth claim for relief. In his fifth claim for relief, Mr. Adams alleges that Mr. Jonas interfered with his employment contract with ModernAd when he (1) intentionally "manipulated the sale of ModernAd media to Acquinity to purposefully deprive Mr. Adams of compensation," and (2) Mr. Jonas

13

"interfered with ModernAd Media's agreement to pay severance to Mr. Adams by hijacking the negotiations."  Docket No. 25 at 23, ¶ 144.  If the arbitrator determines that the sale of ModernAd's assets to Mr. Jonas and his partners does not constitute a "Sale or Change of Control of the Company," Docket No. 15-1 at 3, as that term is defined in the employment agreement, then Mr. Jonas would not have "manipulated a sale" and the arbitrator could determine that Mr. Adams is not entitled to a severance payment. Although Mr. Adams' claim for intentional interference with an employment contract includes allegations that Mr. Jonas "interfered with Mr. Adams' contract with Acquinity," the Court agrees with defendants that Mr. Adams' first and second claims for relief predominate over Mr. Adams' claims related to his oral agreement with Acquinity.

The fact that Mr. Adams' first and second claims for relief are distinct from his third and fourth claims for relief does not obviate the need for a stay.  Because Mr. Adams' first, second, and fifth claims for relief pertain to a three-year employment agreement, while Mr. Adams' third and fourth claims relate to a two-month oral agreement, the facts and issues related to Mr. Adams' first and second claims for relief predominate in this case.  *Chelsea Family Pharm., PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009) (noting that a stay is appropriate where arbitrable claim will have preclusive effect or predominate the lawsuit).  In addition, the arbitration proceedings could significantly reduce the scope of the facts at issue with respect to Mr. Adams' third and fourth claims by establishing the nature of Mr. Jonas' involvement with Acquinity.  Moreover, without a stay, witnesses such as Mr. Jonas could be forced to testify during the arbitration proceedings *and* during discovery in this

case.  The strong possibility of duplication weighs in favor of granting a stay of all issues pending the resolution of arbitration.

Accordingly, the Court concludes that, because the arbitrable claims are intertwined and predominate over the non-arbitrable claims, it is appropriate to stay this entire case pending arbitration pursuant to 9 U.S.C. § 3.[4]  *See Riley*, 157 F.3d at 785. However, instead of a stay, the Court will administratively close this case subject to reopening for good cause pursuant to D.C.COLO.LCivR. 41.2.  Administrative closure is appropriate because the Court has stayed the entire action and the length of time to complete the arbitration process is unknown.  *See Lehman v. Revolution Portfolio LLC*, 166 F.3d 389 (1st Cir. 1999) (noting that "an administrative closing has no effect other than to remove a case from the court's active docket and . . . d[oes] not terminate the underlying case, but, rather, place[s] it in inactive status until such time as the judge, in his discretion or at the request of a party, cho[o]se[s] either to reactivate it or to dispose of it with finality").

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Stay Litigation and to Compel Arbitration or, Alternatively, to Stay Litigation Pending Proceedings in the Proper Forum [Docket No. 15] of Defendants ModernAd Media, LLC and Warren Rustin is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

---

[4]Because the Court finds that a stay of this action is appropriate, defendants' Motion to Dismiss Count III [Docket No. 39] will be denied without prejudice with leave to re-file the motion upon the completion of the arbitration proceedings.

**ORDERED** that the Acquinity Defendants' Motion to Transfer, or, in the Alternative to Stay Counts III, IV, and V Pending Determination of Motion to Compel Arbitration and Memorandum of Law in Support [Docket No. 22] is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

**ORDERED** that the Acquinity Defendants' Motion to Dismiss Count III Against Defendant Garry Jonas and Count V of Amended Complaint, Or, in the Alternative, Motion for More Definite Statement [Docket No. 39] is **DENIED** without prejudice with leave to re-file the motion upon the completion of the arbitration proceedings.  It is further

**ORDERED** that this case shall be administratively closed pursuant to D.C.COLO.LCivR 41.2.  It is further

**ORDERED** that, no later than twenty days after the completion of the arbitration proceedings, the parties shall file a status report advising the Court whether the parties believe the case should be reopened for good cause or whether the case should be dismissed.

DATED February 25, 2013.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge